## TINDER *v.* UNITED STATES.

No. 113.   Argued April 9–10, 1953.—Decided May 25, 1953.

*William W. Koontz,* acting under appointment by the Court, argued the cause and filed a brief for petitioner.

*Murry Lee Randall* argued the cause for the United States.   With him on the brief were *Acting Solicitor*

*General Stern* and *Beatrice Rosenberg. Philip B. Perlman,* then Solicitor General, filed a memorandum suggesting that the writ of certiorari be dismissed.

MR. JUSTICE REED delivered the opinion of the Court.

On September 13, 1950, petitioner pleaded guilty to a six-count indictment charging the theft of six separate letters from the mailboxes of the six addressees in violation of 18 U. S. C. § 1708. Petitioner was sentenced to three years' imprisonment on each count, the sentences to run concurrently. 193 F. 2d 720. After serving almost a year of his term, petitioner, on August 3, 1951, filed a motion under 28 U. S. C. § 2255 to vacate or correct sentence on the ground that the indictment did not allege that any of the letters stolen from the mailboxes had a value of more than $100, hence that the indictment charged misdemeanors under § 1708, the maximum penalty for each of which was one year, instead of felonies for which the maximum penalty was five years. The District Court denied petitioner's motion and the Court of Appeals for the Fourth Circuit affirmed. Both of the courts below held that the misdemeanor provision of § 1708 applies only to thefts of "any article or thing" which in turn had been taken from a letter or package, and not to thefts of intact units of mail. As this result was in direct conflict with the position taken by the Court of Appeals for the Ninth Circuit in *Armstrong* v. *United States,* 187 F. 2d 954, we granted certiorari to resolve that conflict. 343 U. S. 976. The statute in question appears in the margin.[1]

---

[1] "Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts

According to the view of the Government and that adopted by the courts below, the lesser penalty is limited to thefts from mail as opposed to thefts of mail for which the maximum punishment may be imposed. Under the Government's construction, the phrase "article or thing" does not refer to mail or letters. Thus the one-year maximum sentence becomes appropriate only when mail is received in a manner not prohibited by the statute, and the contents thereof then illegally removed. We do not agree with this distinction.

As early as 1810 Congress prohibited and punished mail theft (2 Stat. 598). That statute provided a maximum of seven years' imprisonment for the theft of letters containing "any article of value," and a maximum punishment of a fine of $500 for the theft of letters "not containing any article of value or evidence thereof." In 1825 the statute was amended to provide for increased penalties for the two offenses and the value distinction

---

or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or

"Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or

"Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

"Shall be fined not more than $2,000 or imprisoned not more than five years, or both; but if the value or face value of any such article or thing does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both."

was retained (4 Stat. 109). Under an 1872 revision, however, the punishment distinction as to the value or the nature of the mail stolen was eliminated (17 Stat. 318). Under this revision the maximum sentence which could be imposed for mail theft was five years. This over-all maximum of five years was carried over in the 1909 Act (35 Stat. 1125) and in 18 U. S. C. § 317, the antecedent provision of 18 U. S. C. § 1708, enacted in 1948. In 1948 the entire federal criminal code received comprehensive revision. Among other changes not here pertinent, the 1948 revision added the phrase "but if the value or face value of any such article or thing does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both." The Reviser's Note on this addition which accompanied the bill and explained the changes to Congress states that "[t]he smaller penalty for an offense involving $100 or less was added." (18 U. S. C. § 1708.) This note also called attention to similar adjustments of penalties in §§ 641 and 645, which relate to illegal abstractions of government records, vouchers and other things of value. Nothing was said of the distinction to which the Government would now have us accede.[2]

As was pointed out in the *Armstrong* decision, "It would have been a simple matter for the reviser, or Con-

---

[2] The Chief Reviser explained the purpose of such changes to the House Committee on Revision of the Laws as follows:

"CHANGES IN PUNISHMENT

"Our work revealed many inconsistencies in punishments. Some appeared too lenient and others too harsh when compared with crimes of similar gravity. Our problem was twofold.

"First, we found that in spite of our exact definition of felonies and misdemeanors, 29 punishments were inaccurately labeled, resulting in conflicting court opinions. We solved this problem by omitting from each of the 29 punishments any description of the offense as a

gress, to have made clear, had such been the intent, that stealing 'an article or thing' from an item of mail, leaving the item of mail otherwise intact, is to be regarded as a less serious offense than stealing the item of mail itself. A highly technical distinction of this sort, which could easily have been spelled out, cannot be imposed on the general words 'any such article or thing' in the concluding proviso of Sec. 1708. Those words must be deemed to include any article or thing previously mentioned in Sec. 1708, whether it is described specifically as a 'letter' or generally as 'an article or thing.'" 187 F. 2d 954, 956.

Following the *Armstrong* decision, the Postmaster General and the Attorney General asked Congress to eliminate the misdemeanor provision from § 1708 because the crime of theft of mail had been divided into "felonies and misdemeanors, with the value of the matter stolen as the determining factor." S. Rep. No. 980, 82d Cong., 1st Sess., pp. 3–4; H. R. Rep. No. 1674, 82d Cong., 2d Sess., pp. 3–5. Subsequent to our granting certiorari, June 9, 1952, the proposal to eliminate the misdemeanor provision was approved, July 1, 1952. 66 Stat. 314. Although Congress thus eliminated the conflict which led us to grant certiorari, the change in the statute can have no effect on a prior conviction such as petitioner's. In our view, under the then wording of § 1708, and its purpose as shown by the Reviser's Notes, petitioner was improperly convicted of a felony.

---

felony or misdemeanor, leaving the test as to the kind of crime, to our definitive section.

"Second, we discovered serious disparities in punishments when we considered the nature of various crimes. Before attempting to eliminate these differences we prepared a master table showing the nature of each offense and its punishment. In this way we eliminated many inequalities and brought uniformity out of the conflicts which time had developed." Hearings on H. R. 5450, 78th Cong., 2d Sess., p. 6.

This Court has power to do justice as the case requires.[3] 28 U. S. C. § 2106. The judgment of the Court of Appeals is reversed and the cause is remanded to the District Court to correct the sentence.

*It is so ordered.*

MR. JUSTICE BURTON, MR. JUSTICE CLARK, and MR. JUSTICE MINTON, dissenting, would affirm the judgment of the Court of Appeals for the Fourth Circuit for the reasons stated in the opinion of that court, 193 F. 2d 720.

THE CHIEF JUSTICE, not having heard all of the oral argument, took no part in the consideration or decision of this case.

---

[3] *Patterson* v. *Alabama,* 294 U. S. 600, 607; *Minnesota* v. *National Tea Co.,* 309 U. S. 551, 555; *Walling* v. *James V. Reuter, Inc.,* 321 U. S. 671, 676.