Pablo Perez **MONTANEZ**, Petitioner,

v.

**UNITED STATES** of America, Respondent.

United States District Court
S. D. New York.
Feb. 24, 1964.

Pablo Perez Montanez, pro se.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, by R. Harcourt Dodds, New York City, of counsel, for respondent.

EDELSTEIN, District Judge.

Petitioner, presently incarcerated at Atlanta Federal Penitentiary pursuant to a ten-year sentence has brought a motion under Rule 35, Fed.R.Crim.P.[1] to correct the sentence on the ground that it is illegal. On October 17, 1962, petitioner pleaded guilty to an indictment charging him with a violation of the Narcotic Drugs Import and Export Act, 21 U.S.C.A. §§ 173, 174. The indictment charged petitioner with a sale of 15 grams, 50 milligrams of heroin on August 22, 1962, to an undercover agent of the Federal Bureau of Narcotics. Petitioner had a prior conviction in 1953 in the United States District Court for the District of Puerto Rico for purchasing narcotic drugs not in or from the original stamped package. See §§ 2553(a), 2557(b) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 2553(a) and 2557(b) (1).[2] An information setting forth the details of the 1953 conviction was filed by the United States Attorney on October 31, 1962, and petition-

---

1. Rule 35, Fed.R.Crim.P. provides, in part: "The court may correct an illegal sentence at any time."

2. "2553. Packages—(a) General requirement

"It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate

er admitted the truth of the charges contained therein. Thereupon, on November 2, 1962, he was sentenced to a mandatory minimum ten-year term as a second offender pursuant to the provisions of 26 U.S.C.A. § 7237.[3] 26 U.S.C.A. § 7237 provides that a second narcotics offender shall be imprisoned not less than ten nor more than forty years, and, in addition, may be fined not more than $20,000. This mandatory sentencing section includes within its provisions a violation of § 2557(b) (1) of the Internal Revenue Code of 1939, the section which formed the basis of petitioner's prior conviction.

Petitioner does not directly attack the ten year mandatory sentence imposed by this court. Instead, petitioner claims that his 1953 conviction is "null and void and unconstitutional; and makes his actual sentence of ten years an illegal sentence which should be corrected." More specifically, petitioner contends that his 1953 conviction before the United States District Court for the District of Puerto Rico was a nullity since the status of the Puerto Rico District Court as a "legislative" rather than a "constitutional" court prevented it from exercising jurisdiction to enforce the criminal laws of the United States. And, the petitioner's argument continues, since the Puerto Rico District Court was neither empowered to convict nor sentence him on the 1953 offense, his present sentence as a second offender is illegal since it was predicated on an invalid prior conviction.

Before examining the merits of petitioner's basic contention, a brief discussion of a procedural problem that stands at the threshold as a bar to the determination of the substance of petitioner's claim is indicated. It is well-settled that Rule 35, Fed.R.Crim.P. is not an appropriate remedy to secure the relief on the grounds alleged by petitioner. In discussing the remedial scope of the rule, the Supreme Court has made it abundantly clear that "the narrow function of Rule 35 is to permit correction at any time of an illegal *sentence,* not to re-examine errors occurring at the trial or other proceedings prior to the imposition of sentence." Hill v. United States, 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962). In Hill the Supreme Court set forth several grounds upon which a sentence can be corrected because of illegality: a sentence in excess of that prescribed by the relevant statutes; a sentence whereby multiple terms are imposed for the same offense, or more categorically, where the terms of the sentence itself are not legally or constitutionally valid in some respect, Id. The Hill case reaffirmed the oft-quoted statement in United States v. Morgan, 346 U.S. 502, 506, 74 S.Ct. 247, 98 L.Ed. 248 (1954), that a motion under Rule 35 posits a valid conviction and provides a procedure for bringing an improper sentence into conformity with the law. "Sentences subject to correction under that rule [Rule 35, Fed.R.Crim.P.] are those that the judgment of conviction did

---

tax-paid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession same may be found; and the possession of any original stamped package containing narcotic drugs by any person who has not registered and paid special taxes as required by sections 3221 and 3220 shall be prima facie evidence of liability to such special tax."

3. 26 U.S.C.A. § 7237(b) and (c) (1) provide in part:
"§ 7237. *Violation of laws relating to narcotic drugs and to marihuana* * * *

"(b) *Sale or other transfer without written order.*—Whoever commits an offense, or conspires to commit an offense, described in section 4705(a) or section 4742(a) shall be imprisoned not less than 5 or more than 20 years and, in addition, may be fined not more than $20,000. For a second or subsequent offense, the offender shall be imprisoned not less than 10 or more than 40 years and, in addition, may be fined not more than $20,-000. * * *

"(c) Conviction of second or subsequent offense.—
"(1) Prior offenses counted.— * * *
"(F) section 2557(b) (1) or 2596 of the Internal Revenue Code of 1939."

not authorize." United States v. Morgan, supra, 346 U.S. at 506, 74 S.Ct. at 250, 98 L.Ed. 248; Green v. United States, 274 F.2d 59, 60 (1st Cir. 1960), aff'd., 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed. 2d 670 (1961); United States v. Bradford, 194 F.2d 197, 201 (2d Cir. 1952), cert. denied, 343 U.S. 979, 72 S.Ct. 1079, 96 L.Ed. 1371 (1962). See also Tinder v. United States, 345 U.S. 565, 73 S.Ct. 911, 97 L.Ed. 1250 (1953). Analysis of petitioner's claim reveals that petitioner's attack is not directed at the invalidity of his sentence in the District Court for the District of Puerto Rico but rather at the invalidity of the conviction obtained therein. Petitioner's motion is, in fact, a collateral attack on the Puerto Rico District Court's prior conviction—a claim for which Rule 35, Fed.R.Crim.P. provides no remedy.

■ Even a liberal construction of the petitioner's papers as a motion to vacate sentence, pursuant to 28 U.S.C. § 2255 or, in the alternative, as an application for relief under the all-writs statute, 28 U.S.C. § 1651(a)[4] without regard to the procedural problem under Rule 35, would require a denial of the application. Relief under 28 U.S.C. § 2255 is not available when the sentence has already been served, such as is the case with respect to petitioner's Puerto Rico District Court sentence. See United States v. Morgan, supra, 346 U.S. at 504, 74 S.Ct. at 248, 249, 98 L.Ed. 248. Nor would consideration of petitioner's papers as a motion in the nature of a writ of error *coram nobis* under 28 U.S.C. 1651(a) advance his cause since proceedings in the nature of *coram nobis* may be brought only in the sentencing court, the District Court for the District of Puerto Rico, and not in this court. See United

States ex rel. Lavelle v. Fay, 205 F.2d 294 (2d Cir. 1953); Madigan v. Wells, 224 F.2d 577, 578 (9th Cir. 1955), cert. denied, 351 U.S. 911, 76 S.Ct. 700, 100 L.Ed. 1446 (1956). But procedure aside, his claim must fall.

■ Although petitioner is correct in his "legislative court" characterization of the Puerto Rico District Court, the distinction between the Puerto Rico District Court's status, as compared to the "constitutional court" status of other district courts is not a distinction that makes a difference apropos petitioner's claim of illegality. A brief review of the distinction between a "constitutional" court and a "legislative" court will serve to demonstrate that the "legislative" court status of the Puerto Rico District Court did not deprive it of jurisdiction to punish petitioner for violation of the laws of the United States.

■ The "constitutional courts" are the United States Supreme Court and the inferior Federal Courts, which have been invested with the judicial power of the United States pursuant to Article III.[5] Judges of these courts are guaranteed life tenure during good behavior and compensation which may not be reduced during their term of office. O'Malley v. Woodrough, 307 U.S. 277, 59 S.Ct. 838, 83 L.Ed. 1289 (1939); O'Donoghue v. United States, 289 U.S. 516, 53 S.Ct. 740, 77 L.Ed. 1356 (1933). The power of Article III or "constitutional courts" does not extend to the rendering of advisory opinions, administrative directions and decisions which do not finally adjudicate contested rights but is closely guarded and limited only to "cases and controversies" and then only to subject matter which is within the specific classes of cases enumerated in Section 2 of Article

---

4. 28 U.S.C. § 1651(a) provides:
 "§ 1651. *Writs*
 "(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

5. "The judicial Power of the United States, shall be vested in one supreme

Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the Supreme and inferior Courts, shall hold their Offices during good Behavoir, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office."

III.[6] See Comment, The Legislative Court Problem: A Proposed Solution, 38 N.Y.U.L.Rev. 302 (1963); Comment, Legislative and Constitutional Courts: What Lurks Ahead for Bifurcation, 71 Yale L.J. 979 (1962).

■ The "legislative" courts such as the Puerto Rico District Court and the territorial courts of Guam, the Virgin Islands, and the Canal Zone were not created by Congress pursuant to its power to create inferior courts under Article III, but were created pursuant to another of Congress' enumerated legislative powers, i. e., Article IV, Section 3, which grants Congress the power to make "all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." Balzac v. People of Porto Rico, 258 U.S. 298, 312, 42 S.Ct. 343, 348, 66 L.Ed. 627 (1921). 1 Moore, Federal Practice ¶10.3 [3.–1] (2d ed. 1961). Hence the appellation legislative courts because "[t]hese Courts then, are not constitutional Courts, in which the judicial power conferred by the Constitution on the general government, can be deposited. They are incapable of receiving it. They are legislative courts, created in virtue of the general right of sovereignty which exists in the government, or in virtue of that clause which enables Congress to make all needful rules and regulations, respecting the territory belonging to the United States." American Ins. Co. v. Canter, 26 U.S. (1 Pet.) 511, 7 L.Ed. 242 (1828) (Marshall, C.J.).

The territorial courts were legislated into existence by Congress to fill a judicial vacuum in the distant territories where responsibility for local regulation devolved, in the absence of State governments, upon the Federal Government. Thus, the territorial courts grew to exercise a hybrid jurisdiction. They not only heard and determined local controversies which were outside the restricted Article III categories but were, of necessity, required to perform the traditional judicial functions of Article III courts as well. The Supreme Court's most recent explication of the "legislative-territorial" court concept in its discussion of American Ins. Co. v. Canter, supra, stated that "in the territories cases and controversies falling within the enumeration of Article III may be heard and decided in courts constituted without regard to the limitations of that article; [footnote omitted] ** courts, that is, having judges of limited tenure and entertaining business beyond the range of conventional cases and controversies." See Glidden Co. v. Zdanok, 370 U.S. 530, 545, n. 13, 82 S.Ct. 1459, 8 L.Ed.2d 671. The fact that petitioner's first narcotics conviction was one ordinarily justiciable in

6. "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction; —to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States,—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."

**Footnote 13 in the Court's opinion in Glidden v. Zdanok, omitted in the text, reads as follows:

"Far from being 'incapable of receiving' federal-question jurisdiction, the territorial courts have long exercised a jurisdiction commensurate in this regard with that of the regular federal courts and have been subjected to the appellate jurisdiction of this Court precisely because they do so. Benner v. Porter, 9 How. 235, 243 [13 L.Ed. 119]; Clinton v. Englebrecht, 13 Wall. 434, 447 [20 L. Ed. 659]; Reynolds v. United States, 98 U.S. 145, 154 [25 L.Ed. 244]; United States v. Coe, 155 U.S. 76, 86; Balzac v. [People of] Porto Rico, 258 U.S. 298, 312–313 [42 S.Ct. 343, 66 L.Ed. 627]; International Longshoremen's [& Warehousemen's] Union v. Juneau Spruce Corp., 342 U.S. 237, 240–241 [72 S.Ct. 235, 96 L.Ed. 275]; cf. Martin v. Hunter's Lessee, 1 Wheat. 304, 338 [4 L.Ed. 97]; see Pope v. United States, 323 U.S. 1, 13–14 [65 S.Ct. 16, 89 L.Ed. 3]."

a "constitutional" court as a case or controversy did not, nevertheless, preclude the Puerto Rico District Court of jurisdiction to render the judgment of conviction. For it is apparent that the Puerto Rico District Court, although not bound by the constitutional limitations of Article III, nonetheless had jurisdiction to render an adjudication with respect to litigation falling within the limited class of cases included within that Article. More simply stated, whatever an Article III court could adjudicate, a court created pursuant to Article IV, Section 3, such as the District Court of Puerto Rico, could also adjudicate.

The petitioner, by implication, further contends that Congress did not grant to the Puerto Rico District Court the statutory authority to exercise jurisdiction over violations of the laws of the United States. But this argument was rejected in United States v. Miranda, 255 F.2d 9, 13 (1st Cir. 1958), where the court stated:

"We do not agree with the defendant's contentions. On the contrary we are satisfied that Congress intended when it used the term 'district courts of the United States' in section 3231 to include the United States District Court for the District of Puerto Rico. We think that the legislative history of revised titles 18 and 28 supports this view and we find no intimation there or elsewhere that Congress intended to withdraw from that court its long established criminal jurisdiction and leave a vacuum of federal criminal jurisdiction in Puerto Rico. Quite

to the contrary, we find it to be assumed by Congress that the federal district court in Puerto Rico is and continues to be in all respects equal in jurisdiction to all other United States district courts." [7]

And finally, the petitioner urges that the eight year tenure of District Judges in Puerto Rico as distinguished from the lifetime tenure during good behavior of "constitutional court" judges further supports his claim of illegality. But the tenure limitation imposed on the Puerto Rico District Judge by 28 U.S.C. § 134(a) [8] did not impair his judicial authority to enforce the federal criminal laws. See Acosta Abreu v. United States, 308 F.2d 248 (1st Cir. 1962), cert. denied, 372 U.S. 918, 83 S.Ct. 733, 9 L. Ed.2d 724 (1963). There, Acosta Abreu contended that his sentence should be vacated because the sentencing judge in the Puerto Rico District Court had not been appointed to hold office for a lifetime term during good behavior but only for a term of years. The First Circuit termed Acosta Abreu's appeal based on this contention to be "wholly without any merit whatsoever and entirely frivolous." Acosta Abreu v. United States, supra. This court finds the characterization of Acosta Abreu's contention to be equally applicable to Montanez' identical contention advanced herein.

Petitioner's motion to correct his sentence is denied. Petitioner's application to proceed in forma pauperis in future proceedings with the assistance of appointed counsel is denied without prejudice. See 28 U.S.C. § 1915(a) (d).

So ordered.

---

7. 18 U.S.C. § 3231 provides:
"District courts The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.
"Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof. June 25, 1948, c. 645, 62 Stat. 826."

8. 28 U.S.C. § 134. Tenure and residence of district judges:
"(a) The district judges, except in Puerto Rico, shall hold office during good behavior. The district judges in Puerto Rico shall hold office for terms of eight years and until their successors are appointed and qualified."