**UNITED STATES of America, Appellee,**

**v.**

**Pablo Perez MONTANEZ, Appellant.**

**No. 253, Docket 28911.**

United States Court of Appeals Second Circuit.

Submitted Dec. 9, 1966.

Decided Jan. 16, 1967.

Leon B. Polsky, New York City (Anthony F. Marra, New York City, on the brief), for appellant.

Paul B. Galvani, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, Richard A. Givens, Asst. U. S. Atty., on the brief), for appellee.

Before LUMBARD, Chief Judge, and HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

In 1953, appellant Pablo Perez Montanez pleaded guilty in the United States District Court for the District of Puerto Rico to a charge of purchasing narcotic drugs not in or from the original stamped package, and received a three-year sentence. Int.Rev.Code of 1939, § 2553(a) (now Int.Rev.Code of 1954, § 4704(a)). In 1962, appellant pleaded guilty in the United States District Court for the Southern District of New York to a charge of selling heroin in violation of 21

U.S.C. §§ 173, 174. An information was filed by the United States Attorney giving the details of the 1953 conviction; appellant admitted the truth of the information. On November 2, 1962, he was sentenced to a term of ten years. Although he could have been sentenced to ten years in the sentencing judge's discretion even if he had been only a first narcotics offender, 21 U.S.C. § 174, the record indicates that the ten-year sentence was imposed because of the minimum-mandatory provisions for second offenders. 21 U.S.C. § 174; Int.Rev. Code of 1954, § 7237(c).

Appellant began service of his ten-year sentence, and is still incarcerated. In August 1963, he moved before the New York sentencing judge to correct his sentence under Fed.R.Crim.P. 35, on the ground that the underlying conviction in Puerto Rico was void for lack of jurisdiction. Appellant's argument was that the Puerto Rico court, as a territorial court, could not try an offense arising under Int.Rev.Code of 1939, § 2553(a). In a careful opinion, Judge Edelstein denied the motion on the alternative grounds that appellant had no remedy in the Southern District and that the court in Puerto Rico had jurisdiction to convict appellant. 226 F.Supp. 593 (S.D.N.Y. 1964).

The Government raises here, as it did successfully in the trial court, a number of procedural objections to appellant's motion. Thus, it argues that Rule 35 cannot be used to attack a prior conviction; moreover, appellant is not entitled to relief under 28 U.S.C. § 2255 because he is not "in custody" under the sentence characterized as illegal, and a section 2255 motion would have to be brought before the court in Puerto Rico which imposed the sentence. We need not examine the nuances of Rule 35 since appellant's motion may be treated as a motion under section 2255, Andrews v.

United States, 373 U.S. 334, 337–338, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963), and should be. It is true that as a matter of semantics appellant is "attacking" the Puerto Rico conviction because he wishes to see it fall. Nevertheless, his primary purpose is to correct the New York sentence; his point is that the trial judge might have sentenced him to the mandatory-minimum of five years for first offenders if the judge had not felt legally obliged to impose ten years. Whether this is so we do not know, but there is no doubt that appellant is "in custody" under the New York sentence; moreover, he need not—and in fact does not on the face of the motion—seek immediate release to bring a section 2255 motion. Andrews v. United States, supra at 339–340, 83 S.Ct. 1236.[1] Appellant has by this time served over four years of his sentence and raises a significant constitutional issue of a type heretofore entertained by this court in a collateral review. United States v. Allocco, 305 F.2d 704, 705–708, 9 L.Ed.2d 511 (2d Cir. 1962), cert. denied, 371 U.S. 964, 83 S.Ct. 545 (1963). The contention made there was that a judge who had only a recess commission "was not constitutionally empowered to preside over the trial" of a narcotics case. Although this court rejected that argument, it held that collateral attack under 28 U.S.C. § 2255 was a proper means of raising it. Under these circumstances, we think it inappropriate to require appellant to move in the Puerto Rico court to set aside a conviction and sentence he has already served.

Appellant's argument on the merits contrasts constitutional with legislative (or territorial) courts. We approach with trepidation a subject that has only recently produced extensive opinions in the Supreme Court.[2] The distinction between the two types of courts has been recognized in a series of

---

1. In any event, by this time appellant might be entitled to immediate release if the Puerto Rico conviction were set aside and only the five-year sentence imposed, since appellant has served over four years

and may have earned sufficient "good time," 18 U.S.C. § 4161.

2. Glidden Co. v. Zdanok, 370 U.S. 530 (1962), has three opinions totalling 75 pages, 82 S.Ct. 1459, 8 L.Ed.2d 671.

Supreme Court cases, see Glidden Co. v. Zdanok, 370 U.S. 530, 543–552, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962) (opinion of Harlan, J.), and authorities cited therein, and may in the context here be stated as follows: A constitutional court is one established under article III, section 1 of the Constitution;[3] a legislative or territorial court stems from other constitutional authority, e. g., article IV, section 3, clause 2, which gives Congress power to make necessary rules respecting territories.[4] Appellant claims that his conviction in Puerto Rico in 1953 is void because the court there, as a territorial court, had no jurisdiction to try an offense arising under national criminal statutes since such a case may be tried only in a constitutional (article III) court. In support of his characterization of the Puerto Rico court as something other than a constitutional court, appellant emphasizes that the district judge in Puerto Rico[5] had tenure not for life but only for eight years. See former 28 U.S.C. § 134(a) (1964).[6]

Before proceeding to further discussion of the merits, it should be noted that the Government makes no issue of appellant's standing to question the exercise of jurisdiction by the Puerto Rico court.

As to this, despite some earlier doubt,[7] it appears settled that when a constitutional court is required by article III, litigants have an enforceable right to such a court. In Glidden Co. v. Zdanok, supra at 533, 82 S.Ct. at 1464, the "prevailing opinion" of the Court by Mr. Justice Harlan, joined by Justices Brennan and Stewart, stated: "Article III, § 1, however, is explicit and gives the petitioners a basis for complaint * * *."[8] In that case, as here, petitioners complained of decisions by judges without constitutional power to adjudicate.[9]

■ Considering the merits of appellant's case, his first point is that the district court in 1953 (the date of his first conviction) was a non-article III court. He finds adequate support in Balzac v. People of Porto Rico, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627 (1922).[10] The Supreme Court there held that the question of whether the constitutional right to trial by jury is self-executing in a territory depends upon whether the territory has been incorporated into the Union, and decided that Puerto Rico had not been so incorporated. In trying to demonstrate incorporation, appellant in that case pointed to the creation of a

3. The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

4. The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States * * *.

5. At the time there was only one judge of the district court in Puerto Rico; there are now two.

6. The statute has since been amended to provide life tenure, see discussion infra at text accompanying note 14.

7. See Note, Legislative and Constitutional Courts: What Lurks Ahead for Bifurcation, 71 Yale L.J. 979, 1005–12 (1962).

8. The other participating justices in *Glidden* agreed that there was a basis for complaint—Justice Clark, in a concurring opinion joined by Chief Justice Warren, by implication, and Justice Douglas, in a dissenting opinion joined by Justice Black, by voting to reverse. 370 U.S. at 585, 589, 82 S.Ct. at 1491, 1493.

9. In *Glidden*, a judgment against petitioners in the Southern District of New York had been affirmed by a divided panel of this court, with a judge of the United States Court of Claims, sitting by designation, in the majority. Consolidated with *Glidden* in the Supreme Court was Lurk v. United States [111 U.S.App.D.C. 238, 296 F.2d 360], in which petitioner had been convicted in the United States District Court for the District of Columbia in a trial presided over by a judge of the United States Court of Customs and Patent Appeals, also sitting by designation.

10. "Porto Rico" was changed to "Puerto Rico" in 1932. See 47 Stat. 158.

United States District Court for the island. Answering this specific contention, the Court stated (258 U.S. at 312, 42 S.Ct. at 348):

> The United States District Court is not a true United States court established under Article III of the Constitution to administer the judicial power of the United States therein conveyed. It is created by virtue of the sovereign congressional faculty, granted under Article IV, § 3, of that instrument, of making all needful rules and regulations respecting the territory belonging to the United States. The resemblance of its jurisdiction to that of true United States courts in offering an opportunity to nonresidents of resorting to a tribunal not subject to local influence, does not change its character as a mere territorial court.

We do not pause to characterize a statement on as metaphysical a topic as constitutional-legislative courts as holding or dictum; we take the above quoted paragraph as authoritative for the proposition that the Puerto Rico court is a territorial court. We recognize that a weakening of this proposition may lurk in the prevailing and concurring opinions in Glidden Co. v. Zdanok, supra, which indicated that change in time and circumstance may be a relevant consideration in characterizing a court as constitutional or territorial.[11] It is true that after

*Balzac* and prior to 1953, there had been significant legislation affecting the status of Puerto Rico generally [12] and the district court specifically.[13] Indeed, that court is still the subject of legislative attention; in 1966, Congress amended 28 U.S.C. § 134(a) to provide life tenure for judges of the court appointed thereafter.[14] However, appellant does not ask us to hold that the Puerto Rico district court had become an article III court by 1953, and we see no compelling reason to grapple with the thorny questions of whether we could or should so hold. While an affirmative answer could conceivably result in an interpretation that the district court judge in Puerto Rico already had life tenure in 1953, as the Government alternatively suggests,[15] this result, while a pleasant surprise to the judge,[16] would not benefit appellant.

Therefore, we turn to the second half of appellant's argument, i. e., that a non-article III court cannot enforce the national criminal laws of the United States. Although we do not regard this question as "entirely frivolous," but see Acosta Abreu v. United States, 308 F.2d 248 (1st Cir. 1962) (per curiam), cert. denied, 372 U.S. 918, 83 S.Ct. 733, 9 L.Ed. 2d 724 (1963), we think that precedent requires us to reject the point. In American Ins. Co. v. 356 Bales of Cotton (Canter), 26 U.S. (1 Pet.) 511, 7 L.Ed. 242 (1828), the Supreme Court held that a court in the territory of Florida, staff-

11. 370 U.S. at 547–548, 585–589, 82 S.Ct. at 1471–1472, 1491–1493; see The Supreme Court, 1961 Term, 76 Harv.L.Rev. 54, 165 (1962).

12. 64 Stat. 319 (1950), 48 U.S.C. §§ 731b, 731c, 731d; 66 Stat. 327 (1952), 48 U.S. C. § 732 note; see U. S.-Puerto Rico Comm'n on the Status of Puerto Rico, Status of Puerto Rico 31–48 (1966); Magruder, The Commonwealth Status of Puerto Rico, 15 U.Pitt.L.Rev. 1 (1953).

13. The 1948 revision of the Judicial Code, while not altering the jurisdiction of the already-existing United States District Court for Puerto Rico, for the first time placed provisions relating to that court in a general federal courts act. See 28 U.S.C. §§ 119, 133. The House Committee Report stated that Puerto Rico is included as a judicial district "since in matters of jurisdiction, powers, and procedure" its court is "in all respects equal to other United States district courts." H.R.Rep. No. 308, 80th Cong., 1st Sess. 6 (1947).

14. Pub.L. No. 89–571, 80 Stat. 764 (Sept. 12, 1966), 28 U.S.C.A. § 134(a) & note (Supp.1966). See H.R.Rep. No. 135, 89th Cong., 1st Sess. (1965), quoted in S.Rep. No. 1504, 89th Cong., 2d Sess. (1966), in U.S.Code Cong. & Admin.News, (1966) p. 2786.

15. Brief for the United States, pp. 12–13.

16. Apparently under the 1966 amendment, an incumbent district judge did not acquire life tenure. Pub.L. No. 89–571, § 4, 80 Stat. 764.

ed by judges appointed for only four years, could hear a case which might otherwise fall in the admiralty jurisdiction of federal district courts sitting in one of the states. The opinion was discussed by Mr. Justice Harlan in *Glidden*, 370 U.S. at 544–545, 82 S.Ct. at 1470, as follows:

> All the Chief Justice meant, and what the case has ever after been taken to establish, is that in the territories cases and controversies falling within the enumeration of Article III may be heard and decided in courts constituted without regard to the limitations of that article;[13] courts, that is, having judges of limited tenure and entertaining business beyond the range of conventional cases and controversies.

---

13. Far from being "incapable of receiving" federal-question jurisdiction, the territorial courts have long exercised a jurisdiction commensurate in this regard with that of the regular federal courts and have been subjected to the appellate jurisdiction of this Court precisely because they do so. Benner v. Porter, 9 How. 235, 243 [13 L.Ed. 119]; Clinton v. Englebrecht, 13 Wall. 434, 447 [20 L.Ed. 659]; Reynolds v. United States, 98 U.S. 145, 154 [25 L.Ed. 244]; United States v. Coe, 155 U.S. 76, 86 [15 S.Ct. 16, 39 L.Ed. 76]; Balzac v. [People of] Porto Rico, 258 U.S. 298, 312–313 [42 S.Ct. 343, 66 L.Ed. 627]; International Longshoremen's [etc.] Union v. Juneau Spruce Corp., 342 U.S. 237, 240–241 [72 S.Ct. 235, 96 L.Ed. 275]; cf. Martin v. Hunter's Lessee, 1 Wheat. 304, 338 [4 L.Ed. 97]; see Pope v. United States, 323 U.S. 1, 13–14 [65 S.Ct. 16, 89 L.Ed. 3].

Cf. Moreno Rios v. United States, 256 F.2d 68, 71–73 (1st Cir. 1958); Arbona v.

17. The House Report on Pub.L. No. 89–571, cited supra note 14, stated (p. 2, U.S.Code Cong. & Admin.News, p. 2787):

> There does not appear any reason why the U. S. district judges for the district of Puerto Rico should not be placed in a position of parity as to tenure with all the other Federal judges throughout our judicial system. Moreover, Federal litigants in Puerto Rico should not be denied the benefit of judges made independent by life tenure from the pressures of those who might influence his

Kenton, 126 F.Supp. 366 (S.D.N.Y.1954). It is true that later in the *Glidden* opinion Mr. Justice Harlan commented: "Nor need we now explore the extent to which Congress may commit the execution of even 'inherently' judicial business to tribunals other than Article III courts." 370 U.S. at 549, 82 S.Ct. at 1472. However, this is clearly not an overruling of *Canter* and, in the context of the Court's earlier reference to that case, we do not see how as an inferior federal court we could do other than follow it. It is perhaps unfamiliar and even jarring to contemplate enforcement in Puerto Rico of national criminal statutes by judges with less than life tenure.[17] Fortunately, that situation has been altered for the future by Congress.[18]

Judgment affirmed.

chances of reappointment, which benefits the Constitution guarantees to the litigants in all other Federal courts. These judges in Puerto Rico have and will have the exacting same heavy responsibilities as all other Federal district judges and, therefore, they should have the same independence, security, and retirement benefits to which all other Federal district judges are entitled.

See also Wright, Federal Courts 31–32 (1963).

18. See note 14 supra.