Commonwealth *v.* Woods, Appellant.

Argued January 2, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

reargument refused April 9, 1951.

*William F. Beatty,* for appellant.

*Leo J. Kelly, Jr.,* Assistant District Attorney, with him *William S. Rahauser,* District Attorney, for appellee.

OPINION BY MR. JUSTICE BELL, March 19, 1951:

Eddie Woods, brother of the defendant, was shot and killed at approximately 4 a.m. on August 6, 1949, in defendant's apartment. Eddie was shot in the stomach by a 16 gauge single barrel shotgun of defendant which defendant was holding and the defendant was found guilty of murder in the second degree. Defendant insists that the shooting was accidental and asks for a new trial because the verdict was against the weight of the evidence and because of several alleged errors committed in the course of his trial. The evidence can be briefly summarized as follows:

Defendant rented an apartment for Marion Bowman and lived there with her from February 1949. His brother Eddie visited Marion's apartment sometimes with defendant and sometimes in his absence. On Friday before Palm Sunday, 1949, Marion told defendant she was going to have a baby and that everyone in the neighborhood knew it was Eddie's baby. On Palm Sunday, Paul, Eddie and Marion had a show-down in the apartment as a result of which Eddie and Marion told defendant they were in love with each other and left the apartment together. Defendant followed them and persuaded Marion to return to live with him.

On the evening of August 5th, defendant, Eddie Woods and two men named Stratton and Knochel, went to various saloons together and drank beer on and off for several hours. After 2 a.m. they decided to get some more beer and meet in a ball field in Sharpsburg to drink it. After they started for the ball field Eddie and Knochel went back for a bottle opener. When they did not rejoin defendant, defendant told Stratton that he knew Eddie had gone to Marion's apartment and he was "going up and get him". Defendant then went to his mother's home in Sharpsburg and got his shotgun. On his way down the path to Marion's apartment de-

fendant assembled the shotgun and inserted a live shell in it.

When defendant arrived at Marion's apartment Eddie and Knochel were in the bedroom with Marion and her baby. Defendant several times ordered Eddie off the premises but he refused to leave. They swore back and forth at each other. Defendant told Eddie that the gun was loaded, that he had three shells in it and he was going to hit him with the first one and then hit him in the face with the other two. Marion stepped between the two brothers and threw her arms around defendant; defendant pushed her away and clasped the gun in both hands, pointing the muzzle into his brother's stomach. Eddie's hands and arms were down at his side when he was shot. Marion and defendant denied the gun was pointed at Eddie's stomach; defendant testified that Eddie grabbed or lunged for the gun and it went off accidentally and shot him.

Knochel's testimony at the trial—where he frankly admitted that three times previously he had given an entirely different version of the killing—clearly proved the shooting to have been intentional and not accidental. Just after the shot was fired and again 20 minutes later, defendant said "I shot my brother".

The Commonwealth also proved by *defendant's* gunsmith on cross examination that the gun could be fired without cocking the hammer, but that *no click would be audible* unless the hammer was brought to full cock in which event *it could only be fired by a trigger squeeze.* The importance of this is apparent in view of Marion's admission, on cross examination, that *she heard a click* just before the gun went off.

Appellant raises six questions, several of which we shall discuss. Defendant's first important contention involves the failure of the Commonwealth to introduce in evidence a statement made by the defendant to a

stenographer in the District Attorney's office, which was typed by him, but was not signed by the defendant. The statement admittedly contained many self-serving declarations of the defendant and was not introduced in evidence but the stenographer was permitted to read it in order to refresh his memory; and the District Attorney availed himself of its contents in his cross examination of the defendant. The law does not require the District Attorney to introduce such a statement: *Commonwealth v. Nelson*, 294 Pa. 544, 546, 144 A. 542; and it was proper for the court to permit the stenographer to read it in order to refresh his memory and to thereafter testify, not from the statement, but from his memory: *Commonwealth v. Disalvo*, 275 Pa. 70, 75, 118 A. 559; *Commonwealth v. Klein*, 42 Pa. Superior Ct. 66, 70, 85. In *Commonwealth v. Nelson*, 294 Pa. 544, 144 A. 542, this Court said at page 546: "The Commonwealth was not required to put in evidence the statement made by the defendant sometime after the homicide, containing self-serving declarations, nor did the neglect to do so constitute an improper withholding of evidence". We may also aptly repeat what we said in *Commonwealth v. Disalvo*, 275 Pa. 70, 75, 118 A. 559: ". . . the court properly permitted the stenographer, who had taken stenographic notes of statements made by one of the witnesses in an interview in the county jail, to refer to the transcribed copy of her notes in connection with her evidence. While the notes themselves were the original evidence, they were transcribed personally and merely used to refresh her memory, no attempt being made to offer them in evidence."

Defendant next complains of the court's refusal to permit him under cross examination "to question this boy [Knochel] as to his fear of what will happen to his brother, who was arrested by the Sharpsburg police, and turned over to the County Detective Bureau on

December 21st and had here—on the 19th day of January, the hearing was postponed in Juvenile Court. Mr. Kelly: For what purpose? Mr. Beatty: To show that this boy is not capable of telling the truth". The court properly sustained the District Attorney's objection; the scope or limitation of cross examination is largely within the discretion of the trial court and will not be reversed in the absence of an abuse thereof: *Tolomeo v. Harmony,* 349 Pa. 420, 423, 37 A. 2d 511; *Kline v. Kachmar,* 360 Pa. 396, 404, 61 A. 2d 825; *Commonwealth v. Minoff,* 363 Pa. 287, 294 69 A. 2d 145.

The court stated it would give this defendant every latitude; and further said that defendant had a right to lay the ground-work for, but not to prove his case in chief on cross examination. The court wisely permitted the defendant to cross-examine Knochel as to his three prior inconsistent stories of the killing; and Knochel frankly admitted in detail every statement he had made in defendant's favor on three prior occasions, including his statement that the shooting was accidental.

Defendant also alleges error in the following rulings of the trial judge: Knochel was called by defendant as his witness and the following colloquy occurred: "Mr. Beatty: I propose to show by this witness that his brother Howard, was arrested December 19, 1949, charged with robbery by the Sharpsburg police, and turned over to the County Detective Bureau to prosecute. He had a hearing in Juvenile Court which was continued. The hearing was held on January 19, 1950. He and his brother Howard live in the same house. Mr. Kelly: That is objected to as incompetent, immaterial and irrelevant. The Court: Objection sustained." The court was clearly right in sustaining this objection as the evidence attempted to be elicited would raise a collateral matter so far afield as to materially becloud

the issues in the case and it was obviously immaterial and irrelevant. Mr. Beatty, however, further stated to the court: "Mr. Beatty: Further, I want to prove by this boy that he was in my office December 21st, and told me that George Weidl was insisting upon him making a statement that Paul Woods had both hands on this gun when it went off. The Court: I suppose you are entitled to do that. I see nothing wrong with that, to show that the statement was made as a result of duress, or under power of fear at the suggestion of the County detective. Objection sustained." We agree with appellee that the words "Objection sustained" are apparently a stenographic error. The District Attorney had made no objections to Mr. Beatty's offer and the court properly stated that defendant could show that Knochel's statement to Weidl was made under duress or under power of fear at the suggestion of the County detective. Moreover, as a matter of fact, Knochel did testify that he told Stratton that he made the statement in the District Attorney's office because he was afraid of the District Attorney, so that the error, if it occurred, was harmless.

Defendant also contends that the verdict was against the weight of the evidence. The jury could have found a verdict of not guilty if they believed defendant and Marion or disbelieved Knochel's testimony at the trial and the evidence about the gun. There is also not the slightest doubt that the Commonwealth's evidence, if believed, was sufficient to support a verdict of guilty of murder in the first degree; but the moral provocation for the conduct of defendant or perhaps the various conflicting statements of Knochel, or both, must have impelled the jury to return the verdict of second degree murder. Moreover, the admission of defendant's friend Marion as to the "click" of the gun and the physical facts developed by the evidence concerning this gun, seemingly prove that the killing could not have been

accidental; and the court which saw and heard the witnesses, said: "We are satisfied that the verdict was amply warranted and ought not to be disturbed". We have read the evidence and cannot say that the court was wrong in its conclusion. Certainly the quarrels, the defendant's trip to get his gun, his threats, his admissions that he shot his brother, Knochel's testimony and the physical facts about this gun, furnish ample evidence to justify a verdict of guilty of murder of the second degree.

We have considered all of the other points and contentions made by the defendant, but deem it unnecessary to discuss them.

Judgment and sentence affirmed.