359 A.2d 379
COMMONWEALTH of Pennsylvania, Appellee,

v.

Edward RYDER, Appellant (two cases).

Supreme Court of Pennsylvania.
Argued June 30, 1975.
Decided July 6, 1976.

Chas. Lowenthal, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., James Wilson, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

Appellant, Edward Ryder, was convicted by a jury of murder of the first degree and conspiracy to murder. Motions for a new trial and in arrest of judgment were filed and denied. Ryder was sentenced to life imprisonment on the murder conviction and given a suspended sentence on the conspiracy conviction. An appeal was filed in the Superior Court from the judgment of sentence imposed on the conspiracy conviction and later certified to this Court for disposition with the direct appeal

filed in this Court from the judgment of sentence imposed on the murder conviction.

The facts established by the Commonwealth's evidence at trial are as follows. On August 15, 1973, Ryder and one Samuel Molten, inmates in the Holmesburg Prison in Philadelphia, had an animated argument over religion. It was necessary for prison guards to intervene in order to prevent Ryder from carrying out a threat to throw Molten off a balcony. Ryder attended a meeting the following evening, August 16, conducted by the hierarchy of the cellblock's Black Muslim chapter, that is, Theodore Brown, Kenneth Covil, and Michael Grant, at which the leader of the chapter, Brown, stated that if anyone disagreed with their religious tenets that person "would be taken care of." Subsequently that evening, two members of the hierarchy, Grant and Covil, were seen in their cells sharpening a metal rod. The following day, August 17, Ryder, Grant, Covil and Brown were seen approaching Molten's cell. Covil warned another inmate in the area to leave saying that they were preparing to kill someone and they did not want any witnesses. At the time Ryder had a shirt draped over his arm. Immediately thereafter, the sounds of a scuffle and heavy breathing were heard emanating from Molten's cell while Covil stood outside. Ryder, now emptyhanded, together with Grant and Brown, joined Covil and the four were seen running down the cellblock corridor. As they passed one of the other inmates, Covil said, "You didn't see anything." Molten was found dead in his cell within the next few minutes and a search of the cell revealed a sharpened metal rod, which the medical examiner testified was consistent with the multiple stab wounds which were the cause of Molten's death. A blue prison shirt was also found hidden in a bucket.

Appellant asserts several errors in the trial process. However, after a study of the record and the briefs, we conclude appellant's contentions are without merit and

only one requires discussion here.[1]  It is contended the trial judge, on several occasions, made unnecessary statements in the presence of the jury which indicated bias against the appellant and his counsel and which deprived the appellant of his right to a fair trial.  We are not so persuaded.

Initially, we note that in none of the trial incidents now complained of did appellant move for a mistrial. More importantly, a reading of the record clearly manifests that the statements of the trial judge, which appellant argues prejudiced him and his counsel with the jury, constituted legitimate efforts on the part of the judge to have appellant's counsel cease dilatory and distracting tactics.

Not every unnecessary comment made in a trial requires a new trial.  As this Court said in *Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673, 674 (1975):

> " 'Every unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial.  *A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.*' "

[Citations omitted.]    [Emphasis in original.]

Accordingly, we must evaluate the challenged statements of the trial judge in the instant case with a view to determining if the defendant was deprived of a fair trial.

Specifically, four of the five statements of the trial judge, brought to our attention in the instant ap-

---

1.  Appellant's meritless contentions are: 1) the trial court improperly restricted examination of prospective jurors; 2) the evidence was insufficient to establish a conspiracy murder; 3) the trial court improperly aided the district attorney; 4) Ryder was denied a public trial; 5) the trial court improperly replaced a juror before deliberations began; 6) the Commonwealth failed to establish a chain of custody with regard to certain tangible articles; and, 7) Ryder was improperly denied the right to call an expert witness.

peal, focus directly on the trial judge's response to counsel's repetitious and dilatory tactics.[2]   In each of these four instances, the trial judge, in our view, was legitimately exercising his discretion to expedite the trial and performing his duty to focus the proceeding on the issues presented by the case.   See *Commonwealth v. Evancho*, 379 Pa. 273, 108 A.2d 719 (1954); *Commonwealth v. Woods*, 366 Pa. 618, 79 A.2d 408 (1951).   This in no sense deprived the appellant of a fair trial.   It should also be noted the trial of this case consumed fifteen days during which defense counsel, at sidebar conference, admitted that he employed, as a matter of course, the tactic of asking irrelevant and knowingly objectionable questions.[3]   Since from a reading of the record, we are

2.   *The following are the operative comments of the trial judge:*
A.   "The Court: Let it be noted that defense counsel has paused several minutes looking at the diagram and making some notations."
B.   "The Court: [to the district attorney] Try not to repeat, even though defense counsel has not given that latitude by the court."
C.   "The Court: The objection is overruled.   I am going to say something, your objections, of course, are actually knocking the chain of thought from this court and perhaps maybe the jury.   Therefore, maybe some of the questions have to be repetitious."
D.   "The Court: Excuse me, why is it that you object to every question on direct examination of every witness that takes the stand?   The objection is overruled."
"Defense Counsel: May I respond to Your Honor?
"The Court: Overruled.
"Defense Counsel: Your Honor, you have put a question to me. Does Your Honor want an answer?
"The Court: No, I don't want an answer, because it is obvious that with every question he is asking, that every objection you put to the court is not proper, because I am overruling them. Let's go."

3.   At one point defense counsel inexplicably broke into laughter. The trial judge asked counsel to approach the bench and the following ensued:
"Defense Counsel: I am going to tell you why I laughed on the record as much as you have referred to it on many occasions now.
"The Court: You are not supposed to be laughing in the courtroom unless something really humorous happens.
"Defense Counsel: Your Honor, in our sidebar conference said, and I have gone along, I agree with you, that money is being spent, and when I find myself asking ridiculous questions of a

convinced that the trial judge afforded defense counsel every reasonable latitude in cross-examination and in the face of counsel's admission of employing dilatory tactics, we can find no error in the court's comments aimed at restraining these unwarranted practices by defense counsel.

Additionally, appellant directs our attention to one other comment made by the trial judge in the presence of the jury for separate consideration. During the direct examination of prison guard, Taylor, the witness testified that many of the inmates were in the corridor "talking, hollering, playing cards, things like that." Defense Counsel asked the witness, "Can you give us a demonstration of how loud the noise was?" The assistant district attorney immediately objected. The following then ensued:

> "The Court: Let's bring in—what was it, half a dozen prisoners that you said [sic]? Can you reconstruct it? Do you have a recording machine with you to give us an idea of what noises there were? It is a ridiculous question.

> "Defense Counsel: Do you understand what the judge is asking you?

witness whose answers would be immaterial, he was brought by the Commonwealth, he knew nothing about the case, and we have a learned judge on the bench, the jury sitting there, counsel being paid money, and I figure what in hell is this about, isn't that ridiculous, and on those two occasions I laughed. It just struck me like that. Here Your Honor is pushing the trial trying to save money and here all this business is going on. I agree with Your Honor.
"The Court: My basic principle isn't just to save money, but also to save time. There is a jury sitting in that box and they are entitled to hear the real issues, not irrelevant and immaterial testimony that is trying to be put into this case. If you look at this record at the present time you will find that there is so much irrelevance and so many questions that are objectionable that it is not funny, and you know it and you even admitted many times that they are objectionable.
"Defense Counsel: I have."

"The Court: You asked that ridiculous question. The objection is sustained."

Although the court went further than necessary in ruling on the objection, see Canon 15, Canon of Judicial Ethics, particularly in labeling the question "ridiculous," this is not the type of comment which would prejudice a defendant to the point of depriving him of a fair trial. This is not a case where the court lectured defense counsel, see *Commonwealth v. Horvath*, 446 Pa. 11, 285 A.2d 185 (1971), or where the court threatened counsel in the presence of the jury, *Commonwealth v. Stallone*, 281 Pa. 41, 126 A. 56 (1924).

■ With the knowledge that this trial consumed fifteen days, which, by his own admission defense counsel unnecessarily prolonged, the complained of comments do not warrant a new trial. This is particularly so because we are convinced after a careful study of the entire record that the appellant received a fair trial. The trial judge gave every possible consideration to defense counsel and exercised patience throughout the long trial.[4] The record discloses no conduct or utterances on the part of the trial judge which would in any way prejudice the appellant or his counsel in the eyes of the jury.[5]

Judgments of sentence affirmed.

NIX and MANDERINO, JJ., concur in the result.

4. In addition to those actions of defense counsel outlined above, defense counsel also burst into laughter on at least three occasions, stood on chairs while asking questions on cross-examination, and left the defense table on several occasions to confer in the rear of the courtroom with attorneys not connected with this case during the Commonwealth's examination of witnesses. On each occasion, the trial judge warned defense counsel and ordered that it not happen again.

5. Appellant's brief also contains several recitations of comments made by the trial judge to defense counsel outside the hearing of the jury during sidebar conferences and in chambers. However, each of these dealt directly with counsel's dilatory tactics and the judge's efforts to have counsel conduct himself in a proper manner. We can find nothing in these incidents which would mandate a new trial.