410 A.2d 727

**COMMONWEALTH of Pennsylvania**

v.

**Jose SANABRIA, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 26, 1979.

Decided Feb. 1, 1980.

508

Nathaniel W. Boyd, IV, Bruce C. Bankenstein, York, for appellant.

John C. Uhler, Dist. Atty., Floyd P. Jones, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

ORDER

PER CURIAM.

The Court being equally divided, the order of the Court of Common Pleas of York County is affirmed.

MANDERINO, J., did not participate in the decision of this case.

NIX, J., filed an Opinion in Support of Affirmance in which LARSEN and FLAHERTY, JJ., joined.

O'BRIEN, J., filed an Opinion in Support of Remand in which EAGEN, C. J., and ROBERTS, J., joined.

## OPINION IN SUPPORT OF AFFIRMANCE

NIX, Justice.

The result advocated by the Opinion in Support of Remand would strike a major blow to the efficient and orderly administration of criminal justice in this Commonwealth. Their view would force the Commonwealth to engage in endless retrials at considerable expense, simply because they misapply precedent and ignore the real impact of their decision. We cannot agree.

Jose Sanabria was convicted by a jury of second degree murder in the death of Elizabeth Bilger, an elderly York County woman, who was beaten to death with a tire iron during the course of the robbery of her home. This Court found sufficient evidence to sustain the conviction. *Commonwealth v. Sanabria*, 478 Pa. 22, 385 A.2d 1292 (1978). This Court also rejected Sanabria's contention that the trial court erred in permitting Michael Myers, a co-defendant, to invoke the fifth amendment privilege against self-incrimination. In so holding, we stated:

Michael Myers, a co-defendant of appellant, pled guilty to murder generally for his involvement in the slaying of Elizabeth Bilger. No degree of guilt hearing had yet been conducted and, therefore, judgment of sentence had not been imposed upon Myers. Appellant subpoenaed Myers

and sought the testimony of Myers to support his claim that he had no prior knowledge of the homicide. An *in camera* hearing was held at which time Myers indicated that he would invoke the Fifth Amendment's protection against self-incrimination. The Trial Court sustained this right. Appellant's argument is based on a theory that once Myers pled guilty, even though not sentenced, he waived his Fifth Amendment protection. We do not agree with appellant's contention.

*Id.,* 478 Pa. at 28–29, 385 A.2d 1295.

Today the Opinion in Support of Remand suggests that because Myers has been sentenced for his participation in the murder of Ms. Bilger and because he now wants to help his friend, Sanabria, by testifying in his behalf, that Sanabria is entitled to a new trial. We disagree and do not believe that Myers' testimony is included as unavailable evidence under section 3(c)(13) of the Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. § 1180–3(c) (Supp.1979–80).

Myers had the opportunity to testify in behalf of Sanabria during Sanabria's trial. Instead, he deliberately and expressly chose not to testify at that trial and invoked his fifth amendment privilege. By allowing a convicted criminal to have a retrial where his original trial was without blemish, simply to admit the testimony of a co-felon, who also was convicted of the same crime and who invoked his right not to testify as a witness at the time of the original trial, the Court condemns the Commonwealth to endless retrials and prevents a conviction from ever being final. Myers had the opportunity to testify for Sanabria at Sanabria's trial. That should be enough. What does a criminal convicted of and sentenced for murder of the first degree have to lose by claiming that one or all of his co-defendants were not culpable? What is to stop sentenced co-defendants engaging in a "round robin" whereby each in turn states that he is the sole guilty party and the others were not involved? This situation is so fraught with abuse that it threatens to undermine our entire criminal justice process. The Opinion

in Support of Remand ignores this real danger by glibly stating that it "can see no persuasive justification" for not allowing a retrial on the basis of Myers' change of heart. This total disdain for the practical effects of such an ill-conceived doctrine is without justification.

LARSEN and FLAHERTY, JJ., join in this opinion.

## OPINION IN SUPPORT OF REMAND

O'BRIEN, Justice.

Appellant, Jose Sanabria, was on November 1, 1974, convicted by a jury of murder of the second degree. Post-verdict motions were denied and on May 12, 1975, judgment sentencing appellant to life imprisonment was imposed. Direct appeal was taken to this court and we affirmed. *Commonwealth v. Sanabria*, 478 Pa. 22, 385 A.2d 1292 (1978).

On April 27, 1978, appellant filed a *pro se* petition for writ of *habeas corpus* and to proceed *in forma pauperis*, which the court below accepted as a petition under the Post-Conviction Hearing Act.[1] Appellant advanced one argument in his petition: that he was entitled to discharge or new trial as a result of the Commonwealth's suppression of exculpatory evidence. Appellant's court-appointed counsel filed a memorandum of law which, in effect, amended appellant's pleading to advance a claim of after-discovered evidence. The court below denied appellant's petition without a hearing. This appeal followed.

Appellant's claim of error centers on allegedly exculpatory testimony of a co-defendant which was unavailable at the time of his trial. Consequently appellant seeks relief under that section of the Post Conviction Hearing Act which provides:

"To be eligible for relief under this act, a person must initiate a proceeding by filing a petition under section 5 and must prove the following:

\* \* \* \* \* \*

1. Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. § 1180–1 et seq. (1978–1980 Supp.).

"(c) That his conviction or sentence resulted from one or more of the following reasons:

\*  \*  \*  \*  \*  \*

"(13) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced." 19 P.S. § 1180–3(c)(13).

The instant prayer for relief arises as follows: Appellant was charged with participation, together with two others, Michael Myers and Fred McCleary, in the robbery murder of Elizabeth Bilger. Evidence adduced at trial showed that appellant provided the automobile employed in the commission of the instant crime, that he drove Myers and McCleary to and from the scene of the killing, that the tire iron was removed by Myers from appellant's automobile and allegedly used to kill Ms. Bilger, that appellant fled to Florida on the day following the crime, and that in Florida appellant voluntarily confessed to his participation in the Bilger murder. On appellant's direct appeal we held the above-recited evidence was sufficient in law to support the conviction.

At trial the Commonwealth proposed to call co-defendant McCleary as a prosecution witness. An *in camera* colloquy was conducted and McCleary elected to exercise his Fifth Amendment right against self-incrimination and refused to testify. The Commonwealth rested. Immediately thereafter the defense proposed to call co-defendant Myers to testify on behalf of appellant. Defense counsel made an offer of proof as to Myers' testimony, indicating Myers would testify appellant had no knowledge when he drove his two co-actors to the Bilger home that they intended to commit homicide or any other crime.

A colloquy was conducted out of the hearing of the jury, Myers' constitutional rights were explained to him, and Myers indicated he would testify on appellant's behalf. The trial court, however, in response to argument by both parties, declined to restrict cross-examination of Myers to only those events directly involving appellant; the court indicated it would permit cross-examination, subject to the rules

regulating the scope of cross-examination, concerning all the events of the night of the crime. In the face of that ruling by the trial court Myers elected not to testify.

In due course appellant was convicted, his appeal was taken to this court and we affirmed.

However, on June 15, 1975, seven and one-half months after appellant's trial and two weeks after notice of appellant's direct appeal was docketed in this court, Myers, having been sentenced for his participation in the instant crime, wrote a letter to the district attorney of York County in which he stated he was now willing to testify on appellant's behalf and that his testimony would be in consonance with the offer of proof made at trial. The record indicates appellant was not informed of the existence of the letter until March 27, 1978, four days after the filing of our opinion affirming the judgment of sentence. It is Myers' letter which forms the basis of appellant's claim that there now exists exculpatory evidence which was unavailable at time of trial.

The court below, in denying appellant's petition for post-conviction relief, made three distinct findings: First the court concluded that the letter, not having been written until over seven months after appellant's trial, did not constitute evidence suppressed by the prosecution. Second, the court held the letter was not itself evidence, but merely reflected Myers' intent that if called at a second trial he would testify favorably to appellant. Third, the court ruled that Myers' proposed testimony was not after-discovered evidence within the contemplation of § 3(c)(13) of the Post Conviction Hearing Act. The first two of the court's findings being obviously correct, it is to the third which I now turn.

Recently the Superior Court, presented with the issue raised herein, reached a conclusion contrary to that reached by the hearing court instantly. In *Commonwealth v. Mer-*

*vin,* 263 Pa.Super. ——, 398 A.2d 687 (1979), that court held "testimony from [a witness], who refused to testify at . . trial, is the type of evidence unavailable at the time of trial and subsequently available, which is comprehended by the Act . . . § 1180–3(c)(13)." *Id.* at 689. Neither authority nor analysis was presented in support of the Superior Court's conclusion. We have not heretofore addressed this precise issue.

We have, however, for other purposes, determined that a witness's invocation of his Fifth Amendment rights renders him unavailable. For example, in *Lepley v. Lycoming Cty. Ct. of Com. Pl.,* 481 Pa. 565, 393 A.2d 306 (1978), we held a witness who asserts his Fifth Amendment privilege is unavailable so that his prior recorded testimony may be admitted at trial.

In *Commonwealth v. Rodgers,* 472 Pa. 435, 372 A.2d 771 (1977) and *Commonwealth v. Colon,* 461 Pa. 577, 337 A.2d 554 (1975), we held a witness's invocation of the Fifth Amendment privilege rendered him unavailable for purposes of the hearsay rule.[2] The commentators are of the same mind. See, McCormick's Handbook of the Law of Evidence, § 280 (2nd ed. E. Cleary 1971); 5 J. Wigmore, Evidence § 1409 (Chadbourn rev. 1974); 2 Jones on Evidence § 9.23 (6th ed. S. Gard 1972). See also, annotation, 45 A.L.R.2d 1354 and cases cited therein. Finally, the Federal Rules of Evidence provide:

"  . . 'unavailability as a witness' includes situations in which the declarant—

"(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; . . ." Fed.R.Ev. 804(a)(1).

**2.** Both *Rodgers* and *Colon* were decided by plurality opinion. But neither the dissenting opinion of Mr. Justice Nix in *Rodgers,* nor the concurring opinion of Mr. Justice Pomeroy in *Colon,* expressed disagreement with the principle that a witness who *properly invokes* his Fifth Amendment rights is unavailable for purposes of the hearsay rule.

I can see no persuasive justification for holding on the one hand that a witness who claims his Fifth Amendment privilege is unavailable so that his prior recorded testimony or out-of-court declaration may be admitted into evidence, and on the other that the witness is not unavailable for purposes of the Post Conviction Hearing Act.[3]

Although I would hold a witness who invokes his Fifth Amendment right is unavailable for purposes of the Post Conviction Hearing Act, more than mere unavailability of the witness at trial is required to warrant a new trial. It is well settled that "[i]n order to justify the grant of a new trial on the basis of after-discovered evidence, the evidence must have been discovered after the trial and must be such that it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credibility, and must be such as would likely compel a different result." *Commonwealth v. Cooney*, 444 Pa. 416, 282 A.2d 29 (1971).

Instantly we are presented with no evidence to weigh. We are, rather, confronted with what the court below correctly categorized as a statement of intent to provide evidence, in the form of Myers' letter. It is for the post-conviction hearing court to assay the alleged exculpatory evidence and determine if it satisfies the well-settled test for the granting of a new trial on the basis of after-discovered evidence. *Commonwealth v. Conley*, 232 Pa.Super. 432, 335 A.2d 721 (1975), appeal after remand, 243 Pa.Super. 295, 365 A.2d 858 (1976).

Accordingly, I would remand the case to the court below for a hearing on appellant's claim of after-discovered evidence and disposition of such claim as that court deems appropriate.

EAGEN, C. J., and ROBERTS, J., join in this Opinion.

**3.** The Commonwealth, indeed, yields to appellant on this point and concedes Myers was unavailable at time of trial.