412 A.2d 572

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Edward RYDER, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 11, 1979.

Decided March 21, 1980.

---

Norman M. Abrams, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Neil Kitrosser, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

OPINION OF THE COURT

EAGEN, Chief Justice.

Appellant, Edward Ryder, was convicted of murder of the first degree and conspiracy to murder after a jury trial in Philadelphia. Motions for a new trial and in arrest of judgment were filed and denied. Ryder, represented by trial counsel, filed a direct appeal in this Court, and the judgment of sentence was affirmed.[1] Ryder then petitioned for relief under the Post Conviction Hearing Act[2] (PCHA). After two evidentiary hearings, at which Ryder was represented by new counsel, the PCHA court denied relief. This appeal is from that order.

In this proceeding, Ryder claims his counsel at trial engaged in conduct which created a disgraceful atmosphere and led to frequent public rebuke by the trial judge, and thus deprived him of a fair trial and rendered trial counsel's assistance ineffective.[3] "[C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interest." [Emphasis in original.] *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967).

Rather than presenting evidence to support the foregoing claim at the PCHA hearing, Ryder relied on the notes of trial testimony and our opinion on direct appeal to establish a "per se" case of ineffective assistance of trial counsel. A careful reading of the notes of testimony reveals that, during the trial, Ryder's counsel did in fact rely upon a strategy of minute, often irrelevant, cross-examination and repeated, often unwarranted, objections. However, we can-

1. *Commonwealth v. Ryder*, 467 Pa. 484, 359 A.2d 379 (1976).

2. Act of January 25, 1966, P.L. (1965) 1580, §§ 1 *et seq.*, 19 P.S. §§ 1180–1 *et seq.* (Supp.1979–80).

3. This contention is not waived for failure by Ryder to raise it on direct appeal because he was represented by trial counsel, who cannot be expected to raise his own ineffectiveness. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975).

not say it is unreasonable trial strategy to cross-examine witnesses extensively and even repetitiously in the hope contradictions will result or fruitful information will come to light. Objections, even frivolous objections, are often employed by trial counsel to interrupt the flow or lessen the impact of damaging testimony. Moreover, the trial court's admonitions to defense counsel regarding this course of conduct occurred almost exclusively at side-bar conferences and could not, therefore, have prejudiced the jury's evaluation of the testimony.[4] Viewed as a whole, the record reveals a vigorous and spirited defense and a trial strategy within the realm of the reasonable.

Ryder next contends the refusal of the PCHA court to grant him a new trial based on after-discovered evidence was an abuse of discretion. At the PCHA hearing, Ryder produced the testimony of Kenneth Covil who was charged with the same murder and who denied Ryder was involved.[5]

"In order to justify the grant of a new trial on the basis of after-discovered evidence, the evidence must have been discovered after the trial and must be such that it could

**4.** Ryder complains of three additional courses of conduct of defense counsel. (1) While cross-examining a prison guard regarding a conversation between inmates the guard allegedly overheard, defense counsel climbed on a chair in the rear of the courtroom. This was defense counsel's attempt to emphasize that not only was the guard farther away laterally from the conversation than the rear of the courtroom, but also that the conversation took place some ninety feet overhead on a catwalk. (2) On two occasions, defense counsel laughed inexplicably. He explained to the trial court this was a response to production by the Commonwealth of a witness who apparently had nothing to do with the case, something he found ridiculous. (3) Early in the trial, defense counsel conferred, on several occasions, with at least one other attorney present in the courtroom. The trial court criticized defense counsel for engaging in each of these actions, but always at side-bar conferences.

**5.** At the time of Ryder's trial, Covil was awaiting trial for his participation in the murder. Shortly after Ryder's conviction, Covil was convicted of murder of the first degree. Next, Ryder was denied relief on direct appeal. *Commonwealth v. Ryder*, supra. Thereafter, Covil was granted a new trial. *Commonwealth v. Covil*, 474 Pa. 375, 378 A.2d 841 (1977). Covil then plead guilty to murder of the second degree and was sentenced to a term of imprisonment of ten to twenty years. After this plea was entered, Ryder's PCHA hearing was held.

not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credibility, and must be such as would compel a different result." [Citations omitted.]

*Commonwealth v. Schuck,* 401 Pa. 222, 229, 164 A.2d 13, 17 (1960), *cert. denied,* 368 U.S. 884, 82 S.Ct. 138, 7 L.Ed.2d 188 (1961).

At the PCHA hearings, Covil testified [6] that a leadership hierarchy existed in the Muslim prison community in which he, Covil, was a squad leader; that Ryder was not in a leadership position or otherwise involved because he was new to the prison; that he, Covil, and several other persons whom he would not name planned and carried out the murder of the victim, Samuel Molten; [7] that none of the other defendants, including Ryder, were participants in the killing; and, that Ryder was not in the vicinity of Molten's cell during commission of the murder.[8]

The PCHA court ruled Covil's testimony did not justify the grant of a new trial as after-discovered evidence because: (1) it was cumulative of Ryder's own trial testimony; and, (2) it was not such evidence as would compel a different result if offered at Ryder's trial. With this, we agree.

The situation instantly is substantially the same, if not identical, to that presented in *Commonwealth v. Tervalon,* 463 Pa. 581, 345 A.2d 671 (1975). See *Commonwealth v.*

6. Covil was not offered as a witness at trial presumably because he was awaiting trial.

7. At the second PCHA hearing, Covil denied the existence of an actual "plan," although he had testified to such a plan at the first PCHA hearing. He asserted: "You don't have to plan something to go and do something. You go and do it, if you're right, and you do it and that's how I was."

8. This testimony contradicted a summary of facts to which Covil allegedly agreed at his own guilty plea hearing on November 28, 1977, which indicated Covil conspired and participated with Ryder and others in the murder of Samuel Molten. Covil's PCHA testimony was inconsistent with the summary of facts in several other respects.

*Treftz,* 465 Pa. 614, 351 A.2d 265 (1976), and *Commonwealth v. Dowd,* 472 Pa. 296, 372 A.2d 705 (1977). In *Tervalon,* supra, the testimony of one Stewart was offered as after-discovered evidence in support of a request for a new trial. Admittedly, Stewart's testimony could not have been obtained through due diligence prior to Tervalon's trial. After he was convicted, Stewart, like Covil here, admitted his involvement in the murder for which Tervalon had been convicted and denied Tervalon was involved. We ruled Stewart's testimony was cumulative of evidence offered at trial, not likely to compel a different result, and, hence, was not such "after-discovered" evidence as would warrant a retrial.

Further, we note that the trial evidence here was more than ample to establish Ryder's guilt. See *Commonwealth v. Dowd,* supra. It demonstrated Ryder, with two other inmates in the Holmesburg Prison in Philadelphia, invaded the cell of the victim, another inmate, and stabbed him several times causing fatal wounds. It also demonstrated that, during the stabbing, Covil stationed himself immediately outside of the victim's cell as a lookout. We also note that, during Covil's guilty plea proceedings, the assistant district attorney read a summary of the facts surrounding the murder, including the fact that Ryder was one of the participants, and Covil indicated agreement with this summary. See *Commonwealth v. Tervalon,* supra. Moreover, Covil risked little in offering to testify. *Commonwealth v. Treftz,* supra. Considering all of the evidence and circumstances disclosed by this record, we cannot say the PCHA court abused its discretion in concluding Covil's testimony is not such as would compel a result different than that which followed Ryder's trial.

Order affirmed.

MANDERINO, J., did not participate in the consideration or decision of this case.

NIX, J., filed a concurring opinion.

NIX, Justice, concurring.

Although I agree in the result reached by the majority, I must express my disagreement with the majority's resolution of the issue raised pertaining to the proffered testimony of co-participant Covil.

First, the majority assumes that the reason Covil was not called as a trial witness was because he was awaiting trial on murder charges stemming from the same incident, *see,* 488 Pa. at 408 n.6, 412 A.2d at 573 and second, that if he had been called he would have invoked his rights against self-incrimination guaranteed by the federal and state constitutions. These assumptions of such critical facts are completely unjustified. Moreover, even proceeding from these unfounded assumptions, it is my view that a witness who chooses to exercise the constitutional right against self-incrimination is not "unavailable" for the purposes of post conviction relief under section 3(c)(13) of the Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, 19 P.S. § 1180–3(c)(13) (Supp.1979–80). *See Commonwealth v. Sanabria,* 487 Pa. 507, 410 A.2d 727 (Opinion in Support of Affirmance by Nix, J., joined by Larsen and Flaherty, JJ., filed February 1, 1980). Thus, under my view we would need to proceed no further before determining appellant's claims to be without merit.

Instead of determining whether appellant's contentions provide a basis for relief under section 3 of the PCHA, the majority considers these contentions in terms of after-discovered evidence, and ignores the fact that the present case is a collateral attack pursuant to the PCHA. After-discovered evidence may provide a basis for relief on *direct appeal, see* Pa.R.Crim.Pro. 1132(d), *Commonwealth v. Valderrama,* 479 Pa. 500, 388 A.2d 1042 (1978), but on *collateral attack,* a remedy may be obtained only where the claim fits within the provisions of section 3 of the PCHA. *See Commonwealth v. Sheehan,* 446 Pa. 35, 285 A.2d 465, 467 (1971) (the intent of the PCHA is "to promulgate an exclusive, well-defined procedure for the presentation of those grievances set forth in the Act"). Under section 3(c)(13) a person is

eligible for relief only if his conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced.

The Court's reliance upon *Commonwealth v. Dowd*, 472 Pa. 296, 372 A.2d 705 (1977); *Commonwealth v. Treftz*, 465 Pa. 614, 351 A.2d 265 (1976), and *Commonwealth v. Tervalon*, 463 Pa. 581, 345 A.2d 671 (1975), is misplaced. In all three of these cases, this Court was presented with direct appeals of whether the defendant, after the verdict, had found evidence sufficient to justify a new trial. In such direct appeals the traditional test for "after-discovered evidence" is properly employed. In an action brought under the PCHA, however, we are compelled to employ the standards set forth in that statute, and may not substitute for those standards, the test applicable in a direct appeal.

As the majority indicates, the elements of the after-discovered evidence claim are: (a) the evidence must have been discovered after the trial, (b) must be such that it could not have been obtained at the trial in the exercise of reasonable diligence, and (c) must not be cumulative or merely impeach credibility, but rather, likely to compel a different result. *Commonwealth v. Valderrama*, 479 Pa. at 505, 388 A.2d at 1045. Whether the requirement of unavailability under section 3(c)(13) of the PCHA is coextensive with parts (a) and (b) of the after-discovered evidence rule is a question that has yet to be definitively answered by this Court. *Compare Commonwealth v. Sanabria, supra*, Opinion in Support of Affirmance, *with* Opinion in Support of Reversal. Today's majority opinion has the effect of implicitly suggesting that the requirements of the two rules are the same. While I concede that in many cases the result may be the same regardless of which rubric is used, I do not believe that the distinction should be ignored without first making an express determination as to whether the two theories are in fact the same. An implicit assumption without first carefully assessing the legislative intention sought to be expressed in 3(c)(13) is in my judgment totally unacceptable.

My further disagreement with the majority's resolution of this case stems from its misinterpretation of the third element of the after-discovered evidence rule. The majority concludes that the post conviction hearing court properly determined that the proffered evidence was not credible. In so doing, the majority has suggested that the third requirement of the after-discovered evidence rule (i. e., likely to compel a different result) extends beyond the nature of the testimony and empowers the court to prejudge the credibility of the proffered evidence. I do not believe that the after-discovered evidence rule was intended to transfer the function of determining credibility from the finder of fact to the court. It is my understanding that the third requirement under the rule was designed to limit relief to those instances where the after-discovered evidence goes directly to the question of guilt or innocence, and exclude testimony that would merely attack credibility or corroborate other evidence that had been previously submitted to the finder of fact.

The only instances where credibility is properly before a court faced with the question of after-discovered evidence is where the witness whose testimony is being offered has previously testified in a contradictory fashion. *See, e. g., Commonwealth v. Anderson*, 466 Pa. 339, 341–42, 353 A.2d 384 (1976); *Commonwealth v. Riley*, 458 Pa. 390, 326 A.2d 384 (1974); *Commonwealth v. Coleman*, 438 Pa. 373, 377, 264 A.2d 649 (1970); *Commonwealth v. Baily*, 250 Pa.Super. 402, 409–10, 378 A.2d 998 (1977). In those instances where the court is faced with a recantation, credibility is legitimately an issue in determining whether a prior verdict should be disturbed.[1] In a case such as this, where there has been no

1. In *Commonwealth v. Osborn*, 223 Pa.Super. 523, 524, 302 A.2d 395, 396 (1973), the Superior Court was faced with the recantation of testimony given by a co-defendant. In discussing such testimony, the court stated: "Since the affidavit of a Commonwealth witness who recants his testimony is extremely unreliable, the hearing court must deny relief where it is not satisfied that a recantation is true."

Generally, recantation testimony is offered by an accomplice who no longer has any interest in telling the truth. There is an ever present danger that a co-defendant will be susceptible to urgings that

prior inconsistent statement, attributed to the witness, and his testimony goes to the very heart of the question of the accused's guilt or innocence, the court should not be given the right to decide whether, in its view, a jury would accept or reject the evidence.[2]

he change his story to assist the cause of his co-defendant. This real possibility justifies the court's consideration of credibility in these situations.

2. An exception to this rule would be appropriate *only* where the proffered evidence is *patently unbelievable.*