463 A.2d 1123

**COMMONWEALTH of Pennsylvania**

v.

**Kenneth BENSON, Appellant.**

Superior Court of Pennsylvania.

Argued June 9, 1982.

Filed July 22, 1983.

Elkin A. Tolliver, Jr., Philadelphia, for appellant.

Eric I.B. Beller, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CAVANAUGH, ROWLEY and WATKINS, JJ.

WATKINS, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Philadelphia County, Criminal Division, by the defendant-appellant, Kenneth Benson, after conviction by a jury of second degree murder, burglary and unlawful theft. Post-trial motions were denied and he was sentenced to life imprisonment on the second degree murder charge. This appeal followed.

The evidence supporting the conviction consists of the following: The defendant who lived in a neighboring house to the victim entered the victim's home surreptitiously on the evening of Sunday, November 25, 1979. He was discovered by eight year old Sean Isreal behind the couch in the living room where the defendant was hiding. The defendant took Israel by the neck and throttled him. The boy died as a result of the beating. The victim's dog came to his aid, but the defendant killed the dog by stabbing and choking it. The victim's older brother came home and knocked at the front door. The defendant fled out of the home by forcing open a back door. He ran from the back door of the victim's home to the side entrance of his own home. He

was seen so doing by two young girls who were passing, Wanda Bracey and Jessica Madison, who testified that they saw him leave the back door of the victim's house and enter his own home. He entered his house just as Sean's mother started screaming when she discovered the brutal murder. At trial the defendant and his father testified that he was in his own home all that evening.

On appeal the defendant raises the following questions: (1) that he was entitled to a new trial by virtue of after-discovered evidence; (2) that his confession was the product of an unlawful arrest; (3) that his arrest was not based on probable cause; (4) that his confession was the fruit of unnecessary delay and coercion between the time of arrest and arraignment; (5) that the court below improperly excluded defendant's evidence at trial; (6) that the court improperly admitted into evidence a veiled reference to a polygraph test and (7) that defendant's counsel was ineffective.

In this case the after-discovered evidence claimed were the affidavits of two sisters and a cousin of the defendant who could well have been called as witnesses at trial. The claim was that these witnesses talked to the defendant at times variously named between 6:00 p.m. and 6:35 p.m. on November 25, 1979. The times fixed conflict with the times fixed by the father and defendant and with the witnesses.

Such evidence is admissible on the following conditions: "In order to justify the grant of a new trial based on after-acquired evidence, the evidence must have been discovered after the trial and must be such that it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credibility and must be such as would compel a different result." *Commonwealth v. Schuck*, 401 Pa. 222, 164 A.2d 13 (1960).

Unless there has been a clear abuse of discretion, the refusal by the court to grant a new trial on the basis of after-discovered evidence will not be disturbed. *Commonwealth v. Tervalon*, 463 Pa. 581, 589, 345 A.2d 671, 675 (1980). See also, *Commonwealth v. Sanabria*, 487 Pa. 507,

410 A.2d 727 (1980). In the instant case the court below did not abuse its discretion by refusing to grant a new trial on the basis of after-discovered evidence since this evidence was available to the defendant at the time of the trial.

■ The defendant argues that his arrest occurred at 1:25 a.m. on Monday, November 26, 1979, the morning after the murder. Based on this, he claims that the arrest occurred without probable cause and that the subsequent arraignment occurred after an unreasonable delay. The claim concerning arraignment has been waived as he failed to include this complaint in his pre-trial motions. *Commonwealth v. Meischke*, 273 Pa.Superior Ct. 134, 416 A.2d 1126 (1979).

■ As above stated, defendant claims that his arrest occurred at 1:25 a.m. the morning after the murder. Based on that time, he claims the arrest occurred without probable cause. However, the arrest actually occurred at 6:25 a.m., the time when the defendant gave a full and complete confession so that there was clearly probable cause and no unnecessary pre-arraignment delay.

■ The findings of fact found by the court below determined that the arrest occurred at 6:25 a.m. In reviewing the action at the suppression hearing, this Court may only consider the evidence of the Commonwealth and text of the record as a whole that remains uncontradicted. If when so reviewed, the evidence supports the hearing court's findings, this Court is bound thereby and it may not be reversed unless the legal conclusions drawn therefrom are in error. *Commonwealth v. Johnson*, 467 Pa. 146, 354 A.2d 886 (1976).

As the court below stated: "Defendant next contends that the jury's finding should be reversed because his arrest was unlawful and he was forced to sign a statement in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution. As previously indicated, this Court presided at an extensive hearing on defendant's Motion to Suppress his statement. A review of the notes of testimony of that hearing convinced this

Court that its Findings of Fact and Conclusions of Law were not erroneous, and defendant's claim regarding these hearings was therefore without merit."

Defendant's arrest did not occur until 6:25 a.m. At approximately 9:00 p.m. the previous evening, as part of the investigation in the neighborhood, Detective Oliver interviewed the father and the defendant at their home. On the basis of this investigation, the detectives conferred and approached the Benson house and explained to the father and the defendant that they were investigating the death of Sean Isreal and would like to talk to them. They never entered the Benson house, but asked the defendant to accompany them to the police administration building for an interview. He was told he didn't have to come. Both the defendant and his father agreed that the defendant would accompany them and co-operate. This was found in the findings of fact from the suppression hearing. The detectives testified that he was told that he was not under arrest. The defendant was told at the police administration building that he was being questioned as part of the investigation of the death of Sean Isreal and was given his Miranda Warnings. He appeared alert and responsive. With his consent, he was given a polygraph test and later advised that he had failed the test. Defendant then for the first time admitted that he committed the crime. At no time was the defendant handcuffed and at 6:25 a.m., the time he admitted he strangled the boy, he was placed under arrest. Clearly defendant's arrest after the confession was based on probable cause. Prior to this confession he was free to leave the police administration building. See *Commonwealth v. Haggerty*, 282 Pa.Superior Ct. 369, 422 A.2d 1336 (1980); *Commonwealth v. Horner*, 497 Pa. 565, 442 A.2d 682 (1982).

The confession was voluntary. The defendant claims that he was beaten by a police officer. However, at the hearing, counsel was unable to show that this happened.

■ The court's exclusion of the name of the victim's mother was proper as it was totally irrelevant and it should be noted that though excluded in another way in this record the name was brought to the attention of the jury.

 The further complaint by the defendant concerning a veiled reference to a polygraph test is clearly without merit. This is also true of the claims of ineffective assistance of counsel. As the court below stated: "Defense counsel next contends that this Court improperly permitted Detective Craig Sterling, a Philadelphia Police Department polygraph operator, to refer to the results of the polygraph examination when he testified that he told defendant that he 'felt' he was lying. Defense counsel has quite understandably failed to direct this Court's attention to any case holding that a police officer's statement that he 'felt' a defendant was lying had the effect of raising an inference that defendant had undergone a polygraph examination. To hold that the officer's statement in this case raised such an inference would be to do violence to the plain and ordinary meaning of the word 'felt', and this Court will not find that defendant was denied the effective assistance of counsel because his attorney failed to perform a futile act in an attempt to exclude non-prejudicial testimony. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599 [235] A.2d [349] (1967); *Commonwealth v. Hubbard,* 485 Pa. 353 [402] A.2d [999] (1979)."

Judgment of sentence affirmed.

CAVANAUGH, J., concurs in the result.