517 A.2d 1265
**COMMONWEALTH of Pennsylvania**
v.
**Roderick Herman FREY, Appellant.**

Supreme Court of Pennsylvania.

Argued April 18, 1986.
Decided Nov. 18, 1986.

560

Penn Bradford Glazier, Lancaster, for appellant.

Henry S. Kenderdine, Jr., Dist. Atty., John A. Kenneff, Asst. Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

On post-conviction review we are here faced with the question whether appellant, Robert Frey, convicted of first degree murder by a jury and sentenced to death, which sentence was affirmed by this Court on direct appeal, is entitled to a new trial on the basis of after-discovered evidence.

On November 8, 1979, the body of Barbara Jean Frey, the estranged wife of appellant, was discovered in her automobile in a cornfield in Lancaster County. She had been beaten and shot in the chest, and had died from massive hemorrhaging. On December 6, 1979, appellant confessed to the investigating police that he had paid $5,000.00 to one

Charles Zehring, whom he had met through their joint employment at Turkey Hill Dairies, to murder his wife. Appellant told the officers that Zehring had informed him that he (Zehring) would be assisted by another person at the murder, which would be arranged to look like an automobile accident. Appellant was subsequently arrested and charged with homicide and conspiracy.

At trial, appellant repudiated his confession explaining that he had been confused and frightened, and offered the following as a defense to the charges against him. While admitting that he had indeed paid $5,000.00 to Zehring, appellant characterized the payment as being the result of extortion. Appellant claimed that Zehring had an obsessive interest in appellant's marital problems and had conceived a marked dislike for appellant's wife. As a result of this bizarre reaction, Zehring had threatened to harm either appellant, his wife, or his son unless the money was paid. Appellant testified that he paid $5,000.00 to Zehring in an effort to keep Zehring from harming anyone in his family, and completely denied that he solicited Zehring to kill his wife. Zehring, who was incarcerated while awaiting trial on charges stemming from Mrs. Frey's death, was not called as a witness at appellant's trial.[1]

Not surprisingly the jury rejected appellant's defense and, on May 14, 1980, found him guilty of murder of the first degree for the intentional killing of his wife. Following a separate sentencing proceeding, the jury sentenced appellant to death.

Appellant appealed directly to this court, pursuant to section 9711(h)(1), 42 Pa.C.S. § 9711(h)(1). After considering appellant's claims on appeal and also conducting an independent review of the record to determine if the evidence adduced at trial was sufficient to support the conviction, we affirmed the verdict and judgment of sentence.

---

1. Zehring eventually pleaded guilty to murder generally. He was found guilty of murder of the first degree and sentenced to life imprisonment. Another accomplice in the murder, Richard Heberlig, was also sentenced to life imprisonment.

*Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984).[2] On July 10, 1984, appellant filed a motion with the court of common pleas for a new trial based upon after-discovered evidence, such evidence consisting of a statement given by Zehring to appellant's counsel on April 26, 1984. Appellant contends that the statement is exculpatory in that it shows that he contracted with Zehring to commit the murder only as a result of the latter's threats, duress, and overwhelming domination. By order dated September 18, 1984, the trial court denied the motion for new trial. Appellant appealed from that decision to Superior Court. On the basis that this was a case wherein the death penalty had been imposed, Superior Court transferred the appeal to this Court. *See* 42 Pa.C.S. § 9711(h); Pa.R.A.P. 1941. We accepted the appeal[3] and accordingly will decide the question whether appellant is entitled to a new trial based on after-discovered evidence.

The Post-Conviction Hearing Act sets forth as a ground for relief:

(3) That [the petitioner's] conviction or sentence resulted from ...:

**2.** This writer filed a concurring and dissenting opinion in the direct appeal in this matter. Commonwealth v. Frey, 504 Pa. 428, 453, 475 A.2d 700, 713 (1984) (Nix, C.J., concurring and dissenting). The issue that occasioned my disagreement was finally decided in that appeal and is therefore not an issue in this collateral appeal. It is also to be noted that a writ of certiorari was filed in the earlier appeal and was denied on October 29, 1984. *Frey v. Pennsylvania*, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984).

**3.** There has been some question whether 42 Pa.C.S. § 9711(h), providing for automatic and direct review by this Court of sentences of death, is applicable to collateral appeals that may follow a direct appeal to this Court. We attempted to eliminate this uncertainty in *Commonwealth v. Lesko*, 509 Pa. 67, 501 A.2d 200 (1985), wherein we stated that the original appellate review of post-conviction orders, even in cases where a death sentence has been imposed and affirmed after a direct appeal in this Court, is in the Superior Court. We note that the action by the Superior Court directing this appeal to this Court (July 12, 1985) was prior to the filing of our decision in *Commonwealth v. Lesko, supra,* (November 12, 1985). Although we accepted the appeal in this case to avoid unnecessary delay in disposing of this matter, we reiterate that a collateral appeal, even where the judgment of sentence is death, is to the Superior Court.

(xiii) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced.

42 Pa.C.S. § 9543(3)(xiii).[4]

■ As was noted in *Commonwealth v. Ryder*, 488 Pa. 404, 410, 412 A.2d 572, 575 (1980) (Nix, J., concurring), "[a]fter-discovered evidence may provide a basis for relief on *direct appeal, see* Pa.R.Crim.Pro. 1132(d), *Commonwealth v. Valderrama*, 479 Pa. 500, 388 A.2d 1042 (1978), but on *collateral attack*, a remedy may be obtained ... where the claim fits within the provisions of section 3 of the PCHA." However, those cases on direct appeal relating to the two elements provided for in section 9543(3)(xiii) may be relied upon in ascertaining the legislative intent in the drafting of the after-discovered evidence provision under the Post-Conviction Hearing Act.[5] We have further held that, unless there has been a clear abuse of discretion, the

**4.** The formulation of after-discovered evidence which has been used by this Court consistently where the claim is made on direct appeal, and thus is not under the Post-Conviction Hearing Act, is even more restrictive than that provided for under the Act. The test, in such a situation, is whether the evidence:

(1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeaching credibility of a witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. Valderrama*, 479 Pa. 500, 505, 388 A.2d 1042, 1045 (1978), quoting *Commonwealth v. Mosteller*, 446 Pa. 83, 88, 284 A.2d 786, 788 (1971). It is to be noted that the second and third requirements of the *Mosteller* test are not expressly set forth in the Act.

The language of section 9543(3)(xiii) in the present Post-Conviction Hearing Act, which became effective May 13, 1982, tracks the language of its predecessor, 19 P.S. § 1180–3(c)(13), which became effective on January 25, 1966.

**5.** The fact that the statutory language employs two prongs of the four-pronged common law test justifies the conclusion that the legislature intended to incorporate the prior case law as it related to those two elements. *Cf. Commonwealth v. Sitkin's Junk Co.*, 412 Pa. 132, 194 A.2d 199 (1963); *Parisi v. Philadelphia Zoning Board of Adjustment*, 393 Pa. 458, 143 A.2d 360 (1958); *In re Buhl's Estate*, 300 Pa. 29, 150 A. 86 (1930).

refusal of the hearing court to grant a new trial on the basis of after-discovered evidence will not be disturbed. *Commonwealth v. Tervalon,* 463 Pa. 581, 345 A.2d 671 (1975).

We conclude, upon careful examination of the issues in question, that the test has not been met and that the court below was correct in ruling that this evidence did not qualify as after-discovered evidence which would require the disturbing of the judgment of sentence.

■ Appellant has failed to establish that the information contained in Zehring's statement was unavailable to him at trial. This is not a case of true after-discovered evidence, *i.e.,* new evidence coming to light, after trial, about which the defendant was unaware. If the events recounted in Zehring's statement actually occurred, appellant was obviously aware of them since appellant was a party to these events. Moreover, at the time of his trial appellant was aware that Zehring was in custody awaiting trial for his participation in this matter and thus subject to subpoena if the defense had chosen to call him as a witness. The explanation for failing to call Zehring was that at the time of the trial it was believed that Zehring would be uncooperative because of his, Zehring's, personal situation at the time. The failure to present Zehring was not due to his unavailability, but rather a considered tactical judgment not to use that witness during the trial.

We are not here faced with the question as to whether a potential witness who invokes the Fifth Amendment is properly considered an unavailable witness for the party calling that witness. Compare *Commonwealth v. Sanabria,* 487 Pa. 507, 410 A.2d 727 (1980) (the Court was evenly divided on whether a co-defendant's invocation of the Fifth Amendment renders his subsequent testimony unavailable for purposes of section 3(c)(13) of the former Post Conviction Hearing Act). In this instance appellant did not attempt to call Zehring as a witness so that it is only speculation that, if called, Zehring would have invoked his Fifth Amendment privileges. We will not permit speculation as to such a critical fact. *Commonwealth v. Ryder, supra,*

488 Pa. at 410, 412 A.2d at 574 (Nix, J., concurring). We now repudiate any implication to the contrary that may have been suggested by the majority opinion in *Commonwealth v. Ryder, supra.* Thus we need not here address the question of the "unavailability" of a witness who in fact invokes the privilege against self-incrimination.

Not only does the record fail to establish that this testimony was not "after-discovered," it is also not of such a nature and character that a different verdict would likely have resulted. First, the fact that this statement was given by a convicted co-defendant in this crime who only made the statement after he had been sentenced for his participation and therefore had nothing to lose by attempting to aid the cause of his co-conspirator raises a significant question as to its reliability. We have long recognized that post-verdict accomplice testimony must be viewed with a jaundiced eye. *Commonwealth v. Treftz,* 465 Pa. 614, 351 A.2d 265, *cert. denied,* 426 U.S. 940, 96 S.Ct. 2658, 49 L.Ed.2d 392 (1976). Second, it must be noted that although Zehring's testimony would have corroborated appellant's claims of duress and coercion, Zehring's proffered testimony contradicted appellant's trial testimony as to a critical point. As previously stated, at trial appellant testified that he did not solicit the killing of his wife but rather paid the $5,000 to avoid harm to her. Zehring's version indicated the money was paid for the purpose of his killing appellant's wife, albeit allegedly as the result of Zehring's urging. Additionally, only $3,000 dollars was paid before the killing and the $2,000 balance was paid after the murder. The $2,000 payment clearly could not have been made to prevent Zehring from harming appellant's wife since appellant was aware that the deed had been accomplished when that payment was made, according to Zehring's version. Thus, Zehring's statement corroborated in an important aspect the pre-trial statement appellant had given to the police at the time of his arrest and which he, appellant, contradicted and attempted to avoid at trial. It is therefore hard to conceive how the admission of this testimony would have been likely to result in a favorable verdict for appellant.

In the alternative appellant argues that a new penalty hearing should be held in order to allow the jury to consider mitigating circumstances as revealed by Zehring's statement.[6] It is argued that Zehring's testimony if admitted during the sentencing stage would have established the mitigating circumstance described in section 9711(e)(5). Section 9711(e)(5) provides:

**(e) Mitigating circumstances.**

(5) The defendant acted under extreme duress, although not such duress as to constitute a defense to prosecution under 18 Pa.C.S. § 309 (relating to duress), or acted under the substantial domination of another person.

It is obvious why appellant has offered the alternative argument. The testimony of the proffered witness, Zehring, although it contradicts the underlying defense that was offered at trial, does in fact corroborate appellant's assertions of duress. Additionally, since it is coming from the individual accused of exerting the pressure, there is naturally an added indicia of reliability that would be inherent in such testimony. Nevertheless, since appellant is proceeding in a collateral proceeding, our law requires that eligibility for relief in such a posture is limited to the statutorily prescribed rules of eligibility for relief set forth in section 9543. 42 Pa.C.S. § 9543. The lynchpin for eligibility in this instance is section 9543(3)(xiii). Thus appellant is still faced with the fact that the proffered testimony of Zehring does

**6.** Appellant assumes that such a remedy is permissible under our death penalty statute. *See* 42 Pa.C.S. § 9711. Section 9711(h)(2) provides:

> **(h) Review of death sentence.—**
>
> (2) In addition to its authority to correct errors at trial, the Supreme Court shall either affirm the sentence of death or vacate the sentence of death and remand for the imposition of a life imprisonment sentence.

This Court has yet to reach the question as to whether this provision would permit the empanelling of a new jury to reconsider the imposition of a sentence of death or life, or does this section limit the Court's authority, upon remand, to directing the imposition of a sentence of life. *See, e.g., Commonwealth v. Christy,* 511 Pa. 490, 515 A.2d 832 (1986) (Nix, C.J., concurring and dissenting). For purposes of this discussion, we will accept appellant's assumption that this Court is empowered to provide such a remedy.

not qualify as after-discovered evidence for the reasons previously stated. This fact alone is sufficient to defeat this claim.

■ Moreover, the second prong of subsection (3)(xiii) is also not met. Although the testimony for this purpose corroborates the fact of duress, nevertheless the intrinsic character of the testimony is such that it would be unlikely to influence the jury and thus occasion a favorable decision for appellant. As previously stated, the circumstances upon which this belated statement was made is in and of itself just cause for questioning its validity. Moreover, the sentencing court before whom Zehring appeared in his case recognized that Zehring was a paranoid schizophrenic, a fact fully supported by the record and acknowledged in the opinion of this Court on direct appeal. *See Commonwealth v. Frey, supra,* 504 Pa. at 444, 475 A.2d at 708. Under these circumstances, the testimony of Zehring on its face, without further corroboration, would be unlikely to change the outcome of the proceeding.

Accordingly, the Order of the Court of Common Pleas of Lancaster County is affirmed.