J-S51023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAWN M. JONES-BING | |
| Appellant | No. 2890 EDA 2015 |

Appeal from the PCRA Order August 28, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0015263-2009

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                          **FILED AUGUST 02, 2016**

Shawn Jones-Bing appeals from the order entered in the Philadelphia County Court of Common Pleas dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  After careful consideration, we affirm.

The trial court set forth the relevant facts and procedural history as follows:

> On May 10, 2009, at approximately 3:30 a.m., Karl Keith Young (victim) was fatally shot in his car, parked outside of a pizza parlor located on Spring Garden Street, between Front Street and Delaware Avenue in Philadelphia.
>
> In the early morning hours of May 10, 2009, the victim left his home in Trenton, New Jersey, and traveled with several of his friends to Palmer's Social Club in Philadelphia.  As was their

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

habit, the victim and his friends, Alfonso Slaughter and Michael Brittingham, went to a nearby pizza parlor after leaving Palmer's. While in the pizza parlor, the victim got into a verbal argument with petitioner's co-defendant, Johnathan Lane (hereafter Lane). The victim was heard insulting Lane, making claims that he (the victim) was wealthier than Lane, and calling Lane broke. The victim and his friends were escorted out of the pizza parlor by a security guard. Jones-Bing and Lane were seen together in the pizza parlor, and were escorted out of the pizza parlor together by the security guard a few moments after the victim and his friends were escorted out. Slaughter testified that he recognized Jones-Bing and Lane from Trenton; he went to school with Lane and rode bikes with Jones-Bing. He had seen Lane a few other times at Palmer's Social Club and at the pizza parlor.

Outside, the victim encountered Natalgia Thomas, his daughter's mother, with whom he had a brief conversation. The victim then went to his car, where he sat by himself, in the driver's seat, for a few minutes while Slaughter and Brittingham went back into the pizza parlor. While the victim was alone in his car, a Dodge Magnum pulled up alongside of his car. The driver's window of the victim's car was rolled down, as was the front passenger window of the Magnum, and remained down for the next few minutes, giving the appearance of conversation. The Magnum then pulled into the parking space in front of the victim's car. Lane exited the front passenger seat of the Magnum and got into the front passenger seat of the victim's car, and Jones-Bing exited the driver's seat of the Magnum and got into the rear passenger-side seat. The three men remained in the victim's car for approximately five minutes before a shot was fired. After the shot was fired, Jones-Bing and Lane exited the victim's car, got back into the same seats of the Magnum from which they had exited, and drove off. As he exited the victim's car, Lane was seen wiping something off of his face. The timeline of these events, including the muzzle flash of the gun, was confirmed by video from a surveillance camera mounted outside the front door of the Riverview Place apartment building, located on the corner of Delaware Avenue and Spring Garden Street, right next to the pizza parlor.

Shortly after Jones-Bing and Lane exited the car, Slaughter returned to the victim's car. He opened the passenger-side door and saw the victim laying on the driver's seat, with his head slumped back on the headrest, "with blood just shooting all

down his face." The victim had been shot through his right eye, with the muzzle of the gun at a distance of six to eight inches from his face.

Upon seeing the victim, Slaughter ran back into the pizza parlor, saying, "[t]hey killed my cousin." He and Brittingham then went back to the car, where they remained until the police and paramedics arrived; nothing was removed from the car during this time. Philadelphia Police Officers Charles Stone and Terrance Erwin searched the crowd; no firearm was found on any individual, around the car, or in the immediate area, nor were any shell casings found in the area.

Trial Court Opinion, 1/26/16, at 2-5.

Following a jury trial, Jones-Bing was convicted of third-degree murder, criminal conspiracy, and possessing instruments of crime (PIC). This Court affirmed his judgment of sentence on July 30, 2012, and our Supreme Court denied his petition for allowance of appeal on January 3, 2013.

Jones-Bing filed a timely *pro se* PCRA petition on March 15, 2013, seeking relief based on an affidavit from his co-defendant Lane, apparently exonerating him from any wrongdoing. His court-appointed counsel filed an amended petition on October 10, 2014. The Commonwealth filed a motion to dismiss on April 29, 2015, and each side filed supplemental briefs at the trial court's request. On June 29, 2015, the trial court sent Jones-Bing notice of its intent to dismiss his PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. On August 28, 2015, following Jones-Bing's failure to respond, the court dismissed the petition.

Jones-Bing raises the following issue for review:

Did the PCRA Court err when it dismissed Jones-Bing's Amended Petition without a hearing where Jones-Bing properly pled and would have been able to prove and did in fact prove that Jones-Bing was entitled to relief?

Appellant's Brief, at 3.

"Our standard of review regarding a PCRA court's order is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Garcia*, 23 A.3d 1059, 1061 (Pa. Super. 2011) (citations omitted).

A PCRA court may dismiss a petition without an evidentiary hearing if a petitioner does not raise any "genuine issues concerning any material fact." Pa.R.Crim.P. 907(1). A decision not to hold a hearing will not be reversed absent an abuse of discretion. *Commonwealth v. Collins*, 888 A.2d 567, 579 (Pa. 2005). Jones-Bing argues that he raised a genuine issue concerning material facts in the form of after-discovered evidence, specifically Lane's affidavit stating that Lane himself shot the victim in self-defense, that Jones-Bing had nothing to do with the shooting, and that there was no conspiracy to murder the victim. Affidavit, 5/2/13, at 1.

An after-discovered evidence claim is predicated on "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently became available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi). To obtain relief, the petitioner must demonstrate that the new evidence: (1) could not

- 4 -

have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely compel a different verdict. **Commonwealth v. Washington**, 927 A.2d 586, 595-96 (Pa. 2007). Jones-Bing's claim fails on the first factor, as the information attested to in Lane's affidavit was known by both Lane and Jones-Bing at trial, and as such cannot be considered to have been obtained after the conclusion of the trial.

The trial court requested that Jones-Bing and the Commonwealth address **Washington**, **supra** in their briefs regarding the motion to dismiss. In **Washington**, the defendant sought PCRA review on the basis of a confession given by his co-defendant with whom he was jointly tried, stating that it was he, and not Washington, who fired the fatal shot. **Washington**, 927 A.2d at 597. Our Supreme Court found that this could not be after-discovered evidence because Washington knew from the day of the murder that he did not fire the fatal shot. **Id.** Other cases from our courts have upheld the principle that knowledge obtained during the crime cannot be considered after-discovered. **See Commonwealth v. Frey**, 517 A.2d 1265, 1268 (Pa. 1986) (rejecting after-discovered evidence claim on basis of statement containing information that defendant would have known since the time of the crime); **Commonwealth v. McClucas**, 548 A.2d 573, 576 (Pa. Super. 1988) (holding victim's recantation not after-discovered

evidence because defendant would have known that victim falsely testified at trial).

Jones-Bing's claim of after-discovered evidence is based on his co-defendant Lane's affidavit stating that it was Lane, and not Jones-Bing, who fired the shot killing the victim. This cannot be considered after-discovered evidence under 42 Pa.C.S. § 9543(a)(2)(vi) because, if true, Jones-Bing would have known since the time of the murder that he was not the individual who fired the fatal shot. Lane's affidavit says that Jones-Bing was in the car with himself and the victim, and as such Jones-Bing would have observed the events as they unfolded. Therefore, this information does not constitute after-discovered evidence simply because it takes the form of a post-trial affidavit.

Additionally, Pennsylvania courts have long held that affidavits submitted by co-defendants subsequent to the co-defendant's conviction and sentencing are unreliable. *Commonwealth v. Frey*, 517 A.2d 1265, 1268-69 (Pa. 1986) ("We have long recognized that post-verdict accomplice testimony must be viewed with a jaundiced eye."). *See also Washington*, *supra* (PCRA court properly rejected co-defendant's confession when codefendant had already been convicted of murder and had nothing to lose by contradicting his pre-trial stance); *Commonwealth v. Scott*, 470 A.2d 91, 94 (Pa. 1983) (concluding post-trial statements from co-conspirator were "clearly untrustworthy and unreliable, bordering on charade"); *Commonwealth v. Treftz*, 351 A.2d 265, 272-73 (Pa. 1976) (rejecting co-

conspirator's confession that would have exonerated defendant where co-conspirator learned he could not be retried on the basis of his confession due to double jeopardy). In the instant matter, co-defendant Lane had already been convicted and sentenced at the time he provided his affidavit. Thus, the PCRA court did not err by questioning the validity of and motives behind Lane's affidavit.

Not only does the affidavit contain information that, if true, Jones-Bing has possessed since the time of the murder, it comes from a co-defendant who had already been convicted and sentenced, and as such had nothing to lose from trying to help keep his friend out of prison. Accordingly, the PCRA court did not abuse its discretion by dismissing Jones-Bing's PCRA petition without an evidentiary hearing.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/2/2016</u>