J-S09042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KHALIAF ALSTON | : | |
| | : | |
| Appellant | : | No. 1780 EDA 2020 |

Appeal from the PCRA Order Entered August 13, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0700412-2005

BEFORE: OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED APRIL 07, 2021**

Khaliaf Alston ("Alston"), *pro se*, appeals from the Order dismissing his second Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

In a prior appeal, this Court summarized the factual history underlying this case as follows:

On March 9, 2005, [Alston] and his co-defendant, Ernest [Cannon ("Cannon")], were talking with the victim, Mark Williams [("Williams")], at the intersection of 24th and Somerset Streets in Philadelphia. Kenneth Hicks [("Hicks")], a friend of Williams, walked up to the men and asked Williams if everything was okay. Hicks recognized [Alston] and Cannon from his neighborhood. When Williams responded that he was okay, Hicks began to walk away. At that point, he heard Williams yell for help. Hicks turned around and saw Williams in a physical struggle with [Alston and Cannon]. According to Hicks, [Alston and Cannon] knocked

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

Williams to the ground. Hicks then heard multiple gunshots and saw [Alston and Cannon] fleeing.

Williams died as a result of his injuries. He had sustained gunshot wounds to the hands, wrist, ankle, foot[,] and abdomen. The abdominal wound was deemed a contact wound. Police recovered eight [] spent bullet casings at the scene.

On March 11, 2005, police went to an apartment [in Philadelphia], where [Alston] was staying with his girlfriend…. The police obtained consent to search the apartment and thereafter recovered the murder weapon, a .40 caliber handgun, from a toilet inside the apartment. Ballistics testing established that this weapon [was] the one that killed Williams.

On February 16, 2007, following a bench trial … , [Alston] was convicted of third[-]degree murder, criminal conspiracy, possessing an instrument of crime[,] and violating … the Uniform Firearms Act[.2] On April 12, 2007, [the trial court] sentenced [Alston] to life imprisonment [for the] third[-]degree murder [conviction3]….

The trial court denied [Alston's] post-sentence [M]otion[.] [Alston] then filed an appeal in the Pennsylvania Superior Court, which affirmed [Alston's] judgment of sentence on April 15, 2009…. The Pennsylvania Supreme Court denied [Alston's] [Petition for allowance of appeal] on February 23, 2010. [**See Commonwealth v. Alston**, 974 A.2d 1175 (Pa. Super. 2009) (unpublished memorandum), **appeal denied**, 989 A.2d 914 (Pa. 2010)].

**Commonwealth v. Alston**, 107 A.3d 237 (Pa. Super. 2014) (unpublished memorandum at 1-2) (one citation omitted, one citation reformatted, footnotes added).

---

2 **See** 18 Pa.C.S.A. §§ 2502(c), 903(a), 907, 6106, and 6108.

3 Alston previously had been convicted of second-degree murder.

- 2 -

Alston timely filed his first PCRA Petition in June 2010, which the PCRA court denied. ***See id.*** This Court affirmed the PCRA court's Order. ***See id.***

On August 11, 2017, Alston, *pro se*, filed the instant PCRA Petition, his second. Alston claimed that he had acquired exculpatory evidence that would have changed the outcome of his trial. PCRA Petition, 8/11/17, at 2. The basis of Alston's claim was a letter sent to his mother, from Cannon, stating that Alston had no involvement in the murder. In a *pro se* Supplemental PCRA Petition, Alston invoked the statutory exception to the PCRA's timeliness requirement based upon newly-discovered facts.[4] Following appropriate Notice pursuant to Pa.R.Crim.P. 907, the PCRA court dismissed Alston's Petition. Thereafter, Alston filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Alston presents the following claim for our review: "Whether the PCRA [c]ourt erred for dismissing [Alston's] subsequent PCRA Petition as untimely, where [Alston] clearly met the exception [set forth at] 42 Pa.C.S.A. § 9545(b)(1)(ii)[?]" Brief for Appellant at VII (some capitalization omitted).

Alston claims that on June 24, 2017, he received mail from his mother, Tracey Stokey ("Stokey"), which included a letter and unsworn affidavit from Cannon. ***Id.*** at 5, 6. Alston asserts that he initially learned of the

_____

[4] ***See*** 42 Pa.C.S.A. § 9545(b)(1)(ii).

letter/affidavit in a telephone call with Stokey, but was unaware of the contents of those documents until he received the mailing from Stokey. *Id.* at 5. Alston asserts that Cannon's letter and unsworn affidavit exculpated Alston. *Id.* at 6.

Further, Alston states that he could not have learned this information any earlier. *Id.* According to Alston, "[a]lthough [he] spoke with Cannon in regards to the murder of [] Williams, [he] was [u]naware before trial/at trial and after trial that [C]annon was going to admit his involvement and exonerate [Alston] in a letter to [his] mother." *Id.* at 7. Without the letter, Alston asserts, he had no factual basis upon which to seek PCRA relief. *Id.* Alston claims that he has maintained his innocence throughout the case, and had no funds to hire an investigator following prior counsel's withdrawal in the prior PCRA proceedings. *Id.* Alston points out that this constitutes substantive evidence; it is not offered to impeach the credibility of a witness; and it is not cumulative. *Id.* at 8.

Our standard of review is as follows:

> As a general proposition, an appellate court reviews the PCRA court's findings to see if they are supported by the record and free from legal error. [This C]ourt's scope of review is limited to the findings of the PCRA court and the evidence on the record [] viewed in the light most favorable to the prevailing party.

*Commonwealth v. Hammond*, 953 A.2d 544, 556 (Pa. Super. 2008) (citations and quotations omitted).

A PCRA petition must be filed within one year of the date the petitioner's judgment of sentence became final. 42 Pa.C.S.A. § 9545(b)(1). "For purposes of [the PCRA], a judgment [of sentence] becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Id.* § 9545(b)(3). The one-year time limitation is jurisdictional; a trial court has no power to address the substantive merits of an untimely petition. *Commonwealth v. Abu-Jamal*, 833 A.2d 719, 723-24 (Pa. 2003); *Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 783 (Pa. 2000).

Here, Alston's judgment of sentence became final in 2010 and, therefore, his present PCRA Petition, filed in 2017, is facially untimely. Alston claims that he has met the statutory exception to the timeliness requirement for newly-discovered facts, as set forth at 42 Pa.C.S.A. § 9545(b)(1)(ii). Brief for Appellant at 5. To invoke this exception, a petitioner must allege and prove that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" *See* 42 Pa.C.S.A. § 9545(b)(1)(ii). "The focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts." *Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) (citation and internal quotation marks omitted).

Our review of the record discloses that at trial, through Hicks's testimony, Alston knew of the presence of Cannon (and himself) at the murder scene. As the PCRA court explained in its Opinion,

> the fact that [Alston] was not involved in the murder, if true, was not previously unknown. Even if [Alston] was unaware of his non-involvement, he failed to even acknowledge, let alone satisfy, the due diligence prong of subsection 9545(b)(1)(ii). [Alston] and Cannon have previously conspired to commit murder.[FN1] Given their collaborative history, [Alston] failed to demonstrate that he could not have obtained a statement from Cannon for over a decade. This omission was fatal to [Alston's] attempt to satisfactorily invoke subsection 9545(b)(1)(ii).[FN2]
>
> ---
>
> [FN1] [Alston] ([at] CP-51-CR-0510062-2005)[,] and [] Cannon ([at] (CP-51-CR-0510061-2005)[,] were convicted of conspiracy and murder in the shooting death of Robert Sample in 2005.
>
> [FN2] Even if [Alston] made the requisite showing for purposes of subsection 9545(b)(1)(ii), no relief would be due. Specifically, [Alston] failed to demonstrate that his co-defendant's post-sentence admission would have changed the outcome at trial. Pennsylvania courts have long held that affidavits submitted by co-defendants subsequent to the co-defendant's conviction and sentencing are unreliable. *Commonwealth v. Frey*, 517 A.2d 1265, 1268-69 (Pa. 1986) ([stating that] "[w]e have long recognized that post-verdict accomplice testimony must be viewed with a jaundiced eye."). Like the alleged exculpatory witness in *Frey*, Cannon had nothing to lose by implicating himself to aid [Alston's] cause. Cannon had already been convicted and sentenced. *See Commonwealth v. Cannon*, 972 A.2d 549 [Pa. Super. 2009)] ([unpublished memorandum]).

PCRA Court Opinion, 8/13/20, at 1.

We agree with the sound reasoning of the PCRA court, and affirm on this basis with regard to Alston's claim. *See id.*

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 4/7/2021*